IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Patricia L. Tillman and Joseph L. Mosely, Candidates for Governor and Lieutenant Governor,<br><br>    Plaintiffs,<br><br>v.<br><br>Illinois State Board of Elections, et al.,<br><br>    Defendants. | Case 26 CV 218 |

MEMORANDUM OPINION AND ORDER

Plaintiff Patricia L. Tillman, acting pro se,[1] commenced this action by filing a sealed paper captioned, "Notice of Removal and Motion for TRO and Preliminary Injunction," ECF 1.[2] I construe this filing—which has since been unsealed, and which asserts claims against various individuals and entities under 42 U.S.C § 1983 for violations of the First and Fourteenth Amendments and requests damages and an order for "Emergency Ballot Placement," among other

---

[1] Although the caption of this paper names two plaintiffs—Tillman and Joseph L. Mosely—because plaintiff is not a lawyer, she may file pleadings and motions only on behalf of herself. Accordingly, my references to "plaintiff" refer to Tillman alone.

[2] Plaintiff concurrently filed an application to proceed in forma pauperis, ECF 4, which I granted, and a motion for attorney representation, ECF 5, which I denied. ECF 8. I note that plaintiff failed to fill out required portions of the motion for attorney representation, see ECF 5 at ¶ 2, and although she checked the box next to the text "I *am* currently represented by an attorney requested by the Court in a federal criminal or civil case. The case is described on the back of this page," (emphasis in original), the section the form provides for including such information is blank.

relief—as a combined complaint and *ex parte* motion for injunctive relief. Because I conclude for reasons explained below that the facts plaintiff alleges fail to articulate a plausible federal claim, I dismiss the complaint and deny the associated motions.

The gravamen of plaintiff's complaint is that defendants unlawfully prevented her from participating in objection proceedings challenging her inclusion on the ballot for the March 17, 2026, primary election for Illinois governor.[3] Those proceedings culminated in a December 9, 2025, decision by the State Board of Elections, acting through a State Officers Electoral Board, which sustained the objection of Tanya D. Anderson to plaintiff's nomination papers. In its decision, the Electoral Board found that Anderson filed a timely objection to plaintiff's nomination on November 10, 2025; that the assigned hearing officer held an initial case management conference

---

[3] At a hearing held on January 16, 2026, plaintiff argued that her case is not about whether she was "qualified to be on the ballot," insisting that "we're not talking about state issue[s]. We're talking about my due process. It does not matter what they said about them signatures. Because I can't say the same thing about my opponent's signatures." Tr. at 14:12-16. I am mindful that the claims plaintiff asserts arise under the Constitution. As explained below, however, her due process claim requires analysis of state law. Further, the claims in this case arise out of plaintiff's inability to participate in opposition proceedings challenging *her* candidacy. Because plaintiff does not claim to have filed, or attempted to file, any objection to Governor Pritzker's nominating petition, as "[a]ny legal voter" in Illinois may do by filing "an objector's petition together with two copies thereof in the principal office or the permanent branch office of the State Board of Elections, or in the office of the election authority or local election official with whom the certificate of nomination, nomination papers or petitions are on file," 10 Ill. Comp. Stat. Ann. 5/10-8, her ability or inability to do so has no bearing on her claims before me.

by phone on November 18, 2025, at which plaintiff appeared *pro se* and Ms. Anderson appeared through counsel; and that the hearing officer's Initial Case Management Order was uploaded to the Petition and Objection Portal the same day. The Initial Case Management Order included notice of a record examination to be conducted at 9:00 a.m. on November 24, 2025.

The record examination proceeded as set forth in the Initial Case Management Order, and it yielded a determination that 2,949 of the line objections to the 7,253 signatures plaintiff collected in support of her candidacy were sustained. This left plaintiff with 4,304 valid signatures, or 696 below the statutory minimum of 5,000 signatures required by Section 7-10(a) of the Election Code. At 9:29 a.m. on November 24, 2025, plaintiff emailed an unsigned extension affidavit requesting a 45-day continuance of the record exam and all associated deadlines. The same afternoon, plaintiff filed a Motion for Continuance for Record Exam/Extension, a request for a change of hearing officer, and an unsigned affidavit to the Petition and Objection Portal. The following day, November 25, 2025, plaintiff's request for a change of hearing officer was granted, and the matter was reassigned to defendant Hearing Officer Michael Tecson. Also on November 25, 2025, an Objection Detail Record and Objection Summary Report summarizing the results of the record examination were posted to the Petition and Objection Portal.

3

On December 2, 2025, plaintiff filed a paper captioned, "Motion to Disqualify [defendant] Kevin M. Morphew, Sorling Northrup Attorneys for Miss Conduct (sic) Rule 8.4 and Ethical Misconduct, and Extension of Record Exam, and All Proceedings Before the Illinois State Board of Elections and Anyone Sitting as the Officers Electoral Board." In this submission, plaintiff requested an extension of the record examination and all proceedings for at least 45 days; moved to disqualify the objector's counsel; and demanded disciplinary actions against the previously assigned hearing officer, [defendant] David Herman. Hearing Officer Michael Tecson reviewed the parties' arguments and evidence and issued a recommended decision on December 3, 2025.

The Electoral Board adopted Mr. Tecson's findings of fact, conclusions of law, and recommendations in its December 9, 2025, decision. First, the Board held that plaintiff had ample notice of the record examination, and it denied as untimely her November 24, 2025, motion to continue the record examination, as she filed it after the record examination had already begun. With respect to plaintiff's December 2, 2025, motion for a continuance of the record examination and objection proceedings, the Board denied the motion under Rule 1(a) of the Rules of Procedure, which states:

1. Expedited Proceedings

   a. <u>Timing</u>. On all hearing dates set by the Board or its designated Hearing Officer (other than the Initial Meeting), the objector and the candidate shall be prepared to proceed with the hearing of their case.

4

> Due to statutory time constraints, the Board must proceed as expeditiously as possible to resolve the objections. Therefore, there will be no continuances or resetting of the Initial Meeting or future hearings except for good cause shown.[4]

The Board dismissed the portion of plaintiff's motion that sought to disqualify the objector's counsel and to take disciplinary action against the former hearing officer, holding that it lacked the authority to grant the requested relief.

The Board's decision is subject to judicial review pursuant to Section 10-10.1 of the Illinois Election Code, which provides:

> A candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court within 10 days after the decision of the electoral board.

*Kozel v. State Bd. of Elections*, 533 N.E.2d 796, 800 (Ill. 1988) (quoting Ill. Rev. Stat. 1987, ch. 46, par. 10-10.1). At plaintiff's *ex parte* hearing on January 13, 2025, she stated that she timely filed such a petition but later dismissed it in favor the instant action.

Although plaintiff's complaint makes scattershot reference to various constitutional theories and Supreme Court cases, the essence

---

[4] The Rules of Procedure adopted by the State Board of Elections for the hearing and passing upon objections to established party candidates seeking to appear on the ballot for the March 17, 2026, General Primary Election are publicly available at: https://www.elections.il.gov/AboutTheBoard/ElectoralBoard.aspx (last visited Jan. 12, 2026).

of her claim is that defendants interfered, in various ways, with her ability to obtain the 5,000 valid signatures that Illinois election law requires to appear as a gubernatorial candidate on the primary ballot. To be clear, plaintiff does not claim that the signature requirement itself is unduly burdensome. Accordingly, her focus on the "*Anderson-Burdick*" framework is misguided.[5] Rather, she claims that defendants—who although named individually in the case caption are generally lumped together in her substantive allegations—acted to prevented her from appearing on the ballot as a primary candidate for Illinois Governor. She groups her factual allegations into five categories:

- "Petition Interference," in which she alleges that defendant Wallace Gator Bradley, "a circulator for Governor J.B. Pritzker, physically took Plaintiff's petitions from voters' hands and told voters not to sign Plaintiff's petition";

- "Portal Exclusion (Nov. 11-21, 2025)," in which she alleges that she was "blocked from access to the petition objection

---

[5] This refers to the seminal ballot access cases, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). In those cases, the Court established the standard that courts must use to evaluate whether restrictions that state election laws place on ballot eligibility unduly burden voters' constitutional right to associate or to choose among candidates. Here, however, plaintiff is not challenging any provision of Illinois election law but rather the conduct of individuals who she claims interfered with her ability to comply with it.

portal from its opening on November 11, 2025 to the end of business on November 21, 2025";[6]

- "Assault at Official Hearing (Nov. 18, 2025)," in which she claims that the attorney for the objector "forcibly twisted Plaintiff's arm, causing injury requiring hospital treatment and a wrist brace," while Board failed to intervene;

- "Denial of Continuances; Illusory Access," in which plaintiff claims that her requests to continue the record examination and proceedings were denied and met with demeaning remarks concerning her competence; and

- "Ongoing Harm," in which plaintiff states that all of the foregoing deprived her of a meaningful opportunity to be heard, chilled protected political activity, and continues to impair her ballot access.

Compl., ECF 1 at 7-8.

Plaintiff organizes her claim into various counts, which she labels "Due Process (14th Amendment, § 1983)," "First Amendment Retaliation (§ 1983)," "Equal Protection (§ 1983)," "Ballot Access

---

[6] Plaintiff references and attaches to her complaint an email dated November 21, 2024, from defendant Sean Sarcu acknowledging that plaintiff had been "unable to upload documents to the portal due to a coding error in our system that we have encountered in other cases," but he advised that her "inability to file documents through the Petition and Objection Portal has been resolved as of about 4:05 PM" using the "short-term fix" of listing her as attorney "until the larger coding problem is solved." ECF 1 at 15.

7

& Political Association (§ 1983)," and "Deliberate Indifference to Safety and Medical Needs (14th Amendment, § 1983)." As her formulation of these counts suggests, § 1983 "is not itself a source of substantive rights, but merely provides a method of vindicating federal rights elsewhere conferred." *Ghiles v. Municipal Electoral Bd./Commissioners of Chicago Heights, Illinois*, No. 19-CV-1775, 2020 WL 919002, at *4 (N.D. Ill. Feb. 26, 2020). Additionally, "Section 1983 addresses only *state* action." *L.P. v. Marian Catholic High School*, 852 F.3d 690, 697 (2017) (emphasis in original). Indeed, its text "expressly includes a requirement that the defendant acted under color of law," since most constitutional rights, including those plaintiff asserts here, "are protected only against infringement by government." *Krupa v. Quinn*, 596 F. Supp. 3d 1127, 1135 (N.D. Ill. 2022) (citations omitted). This means that "[p]urely private conduct, however discriminatory or wrongful," does not give rise to constitutional claims. *Id*. (internal quotation marks and citation omitted). Additionally, § 1983 liability requires an individual's personal involvement in the alleged constitutional violation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) ("[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."). Finally, states and their agencies are not subject to § 1983 liability because they are protected by Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65-66, (1989).

The foregoing principles spell doom for most of plaintiff's claims. To begin, the misdeeds she attributes to private actors Wallace Gator Bradley—maligning her to potential voters and interfering with her efforts to obtain signatures—and to Kevin Morphew—verbally and physically bullying plaintiff during objection proceedings—bear none of the hallmarks of state action.[7] The Illinois State Board of Elections (and the state officials plaintiff names as defendants, to the extent they are sued in their official capacities), are shielded by the Eleventh Amendment. And plaintiff has articulated no basis for inferring personal involvement in any constitutional violation by any defendant to whom she attributes no specific conduct: ISBE Board members Laura K. Donahue, Rick S. Tervin, Sr., Jennifer M. Ballard Croft, Christina D. Cray, Tonya L. Genovese, Catherine S. McCrory, Jack Vrett, and Cassandra Watson; Attorney General Kwame Raoul; and Assistant Attorney General Lee B. Stark.

This leaves three individual defendants susceptible to money damages if plaintiff's constitutional rights were violated: ISBE Legal Counsel Sean Sarcu, Hearing Officer David Herman, and Hearing Officer K. Michael Tecson, and the ISBE, which I assume for

---

[7] Nothing in plaintiff's submissions suggests that either Bradley or Morphew was a state actor. Morphew was the attorney for objector Tanya Anderson. Bradley was allegedly circulating petitions for Governor JB Pritzker. Even assuming that Bradley was acting on behalf of Governor Pritzker's campaign, "campaigning for reelection is private activity." *Krupa* 596 F. Supp. 3d at 1138.

9

discussion's sake has authority to implement the injunctive relief plaintiff seeks.[8] Plaintiff's individual claims against Mr. Sarcu are non-starters, however, as the only conduct she attributes to him is that he sent an email confirming that plaintiff had been unable to upload documents to the election portal due to "a coding error in our system that we have encountered in other cases," but that the problem had been resolved with a "short term fix" as of 4:05 p.m. on November 21, 2025. There is no plausible constitutional violation lurking in that conduct.

As for the hearing officers Herman and Tecson, plaintiff claims that they deprived her of her constitutional rights by denying her requests for continuances, framing this deprivation, first and foremost, as a violation of due process. But having failed to invoke the procedures that Illinois law provides to remedy the alleged deprivation, she cannot now be heard to complain that her constitutional rights were violated. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) *inadequate state process*." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted) (emphasis added).

Contrary to plaintiff's mistaken view that the hearing officers' alleged obstruction establishes a due process claim, a

---

[8] I express no opinion on whether this is correct as a legal or factual matter.

procedural due process claim is not "complete" unless the state fails to provide an adequate post-deprivation remedy. *Id*. *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). "When a plaintiff argues that state officials acted in a random and unauthorized manner to deprive her of due process, she must also avail herself of state post-deprivation remedies or explain why those remedies are inadequate." *Ores v. Vill. of Dolton*, 152 F. Supp. 3d 1069, 1082 (N.D. Ill. 2015) (alterations, internal quotation marks, and citation removed). As noted above, the Illinois Election Code provides for judicial review of Board of Election decisions in objection proceedings—a state remedy that plaintiff elected to forgo in favor of filing a federal action on the eve of ballot certification—and nothing in her submissions suggests that these state-law remedies were inadequate to redress the deprivations she alleges. Accordingly, she fails to allege "an essential part" of her due process claim. *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 792 (N.D. Ill. 2024).[9]

---

[9] Although plaintiff explicitly claims violation of "procedural due process," her complaint makes occasional reference to concepts frequently associated with substantive due process. But her claim fares no better when viewed through the lens of substantive due process, which "protects against only the most egregious and outrageous government action," *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019), and requires conduct so arbitrary and irrational

11

Plaintiff's remaining claims are equally deficient. To plead a violation of the Equal Protection Clause, plaintiff must allege facts plausibly suggesting that defendants' actions were motivated by a discriminatory purpose and had a discriminatory effect. *Better Broadview Party v. Walters*, 159 F. Supp. 3d 885, 893 (N.D. Ill. 2016). Plaintiff does not claim that defendants' conduct was motivated by animus towards any protected group of which she is a member, so I interpret her claim as alleging discrimination based on a "class of one." Accordingly, her allegations must suggest that she was intentionally and irrationally singled out for differential treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, two separate hearing officers determined that plaintiff's motions to continue—filed on November 24 and December 2, 2025, were untimely because they were filed after the record examination had begun, although she had notice of the date and time of the record exam no later than November 21, 2025.[10] That is not an arbitrary or irrational conclusion based on Rule of Procedure 1(a),

---

that it shocks the conscience. This standard is especially difficult to meet in the "rough-and-tumble electoral context," *O'Dekirk v. Roechner*, No. 23-CV-4658, 2025 WL 524149, at *6 (N.D. Ill. Feb. 18, 2025), and plaintiff's allegations concerning her delayed access to the election portal and the hearing officers' unwillingness to grant her motions for continuances do not approach this level of seriousness.

[10] Plaintiff's vague statement that the election portal "still didn't work" even after implementation of the "short term fix" granting her access to it as of 4:05 p.m. on November 21, 2025, does not meaningfully controvert the Electoral Board's notice finding.

whose application to objection proceedings is apparently routine and was facially appropriate in the proceedings here. Most importantly, nothing in plaintiff's submissions suggests that either the hearing officers or the Electoral Board applied Rule 1(a) differently to plaintiff than to any other candidate.

Plaintiff's First Amendment retaliation claim likewise lacks support in the allegations she asserts against either the hearing officers or the ISBE (recall that no other defendant is susceptible to either a damages award or an injunction pursuant to § 1983). Such claims require a nexus between defendants' actions and an intent to chill plaintiff's protected activity. *See Dempsey v. Johnson*, 69 N.E.3d 236, 246 (Ill. App. Ct. 2016). As explained above, the Electoral Board's factual findings suggest a reasonable application of the timing provisions in its Rules of Procedure, which strike a facially appropriate balance between plaintiff's exercise of her First Amendment rights and the state's interest in orderly elections.

Finally, plaintiff's claim for "Deliberate Indifference to Safety and Medical Needs (14th Amendment, § 1983)" does not articulate an independent constitutional claim. "Deliberate indifference is a heightened standard for determining whether state actors are liable for violating a plaintiff's constitutional rights. Deliberate indifference is not an independent cause of action." *Hughes v. City of Chicago*, No. 02 C 7267, 2003 WL 21518592, at *4 (N.D. Ill. July 2, 2003). As the *Hughes* court noted, deliberate

13

indifference "is most commonly, though not exclusively, applied to prisoners' § 1983 suits for Eighth Amendment violations." *Id*. at n. 5. To be clear: no one should suffer a battery during objection proceedings (or anywhere). But plaintiff's recourse for the conduct she alleges in this connection is not a federal lawsuit. Nothing in the Constitution required defendants to summon law enforcement or medical assistance, and as explained above, they did not violate plaintiff's constitutional rights by denying her request to proceed at a later date.

For the foregoing reasons, plaintiff has not articulated a viable § 1983 claim against any of the defendants named in her complaint. Accordingly, the complaint is dismissed, and the TRO and preliminary injunction she seeks are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 16, 2026