IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA L. TILLMAN and JOSEPH L. MOSELY, Candidates for Governor and Lieutenant Governor, | ) | Case No. 26 C 218 |
| Plaintiffs, | ) | |
| v. | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, *et al.*, | ) | Chicago, Illinois |
| | ) | January 16, 2026 |
| Defendants. | ) | 10:03 a.m. |

TRANSCRIPT OF PROCEEDINGS - STATUS HEARING
BEFORE THE HONORABLE ELAINE E. BUCKLO

APPEARANCES:

Plaintiff, *pro se*: MS. PATRICIA TILLMAN
229 E. 51st Street
Chicago, Illinois 60615

Also Present: MR. MICHAEL DIERKES, Illinois Attorney General's Office.

Court Reporter: SANDRA M. TENNIS, CSR, RMR, FCRR
Official Court Reporter
219 S. Dearborn Street, Room 2260
Chicago, Illinois 60604
Telephone: (312) 554-8244
sandra_tennis@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: Calling 26 CV 218, Tillman versus the Illinois State Board of Elections, *et al*, for status. Please be seated.

THE COURT: Thank you. Go ahead.

MR. DIERKES: Good morning, your Honor. My name is Michael Dierkes. I'm with the Illinois Attorney General's Office. I'm here on behalf of Attorney General Raoul and Assistant Attorney General Lee Stark. And I should add, these individuals haven't been properly served. And another attorney in my unit is going to handle the case if it does go forward. But we got notice from Ms. Tillman of this hearing today, and we wanted to have someone here.

THE COURT: Okay. Yes. Well, the other day I didn't think you had notice, and I thought --

MS. TILLMAN: Your Honor, I object to that. They got notice from me through e-mail, which you granted me --

THE COURT: Right. They have notice.

MS. TILLMAN: -- permission to notify them from -- through e-mail two days ago.

THE COURT: I just wanted to make sure that they did.

MS. TILLMAN: Yeah.

THE COURT: As it turns out --

MS. TILLMAN: I have records of that in my e-mail, that they did get served.

THE COURT: Well, yes, I mean, they're here, but --

MS. TILLMAN: Yes.

THE COURT: -- I don't think it's going to change anything. What I said the other day is that, in terms of due process, you had an opportunity -- you know, what they had to do was to provide you with process. I'm not sure if I stated it well enough the other day, but they have to provide you with a process. And as I said, the statute provided you with the ability to challenge their ruling, and you didn't take advantage of it. So that's going to really take care of the due process. And as I said, I could not, as a form of relief anyway, just put you on the ballot. It just --

MS. TILLMAN: Can I -- can I ask one thing?

THE COURT: Yes, of course.

MS. TILLMAN: Please?

Court Reporter, you sent me an e-mail the other day, and I think, if I'm correct, it could be sent directly, like now, directly to me. Is that true?

THE REPORTER: After you pay for the transcript, yes, I can e-mail you the transcript.

MS. TILLMAN: Today.

THE REPORTER: If you order it. If you order it and you pay for it, yes, I can e-mail it to you.

MS. TILLMAN: Today.

THE COURT: What -- what is it that you want to --

MS. TILLMAN: I want the -- I think it was said that I can get the audio of this hearing today. And that's what I was asking.

THE REPORTER: (Nodding.)

MS. TILLMAN: Okay. So last time that I --

THE COURT: Well, we'll issue a formal order.

MS. TILLMAN: You'll issue an order. And can I get a fee waiver for transcripts, please?

THE REPORTER: There's no fee waiver for transcripts.

MS. TILLMAN: It is if the judge say so.

THE COURT: What would be the purpose of that if I issue an order?

MS. TILLMAN: For appellate reasons.

THE COURT: I don't think that you would need it. I think you would just --

MS. TILLMAN: I do need --

THE COURT: -- go by the order.

MS. TILLMAN: I need transcripts for -- to appeal. I need the transcripts.

THE COURT: No, you don't.

MS. TILLMAN: Okay. So, your Honor, the last time that I was here, what you said was my due process does not matter because the state said I don't have enough signatures. And then you, quote, said, we all know that Governor Pritzker has enough signatures. I don't know that.

THE COURT: I don't know that. I have no idea.

MS. TILLMAN: But that's what you said.

THE COURT: But I'm saying whether he had enough signatures wasn't the issue.

MS. TILLMAN: The issue is that my due process rights has been violated.

THE COURT: Okay.

MS. TILLMAN: I did not --

THE COURT: That's what I'm trying to understand, which is why I had you in the other day and back today, to make sure that I understand what it is you're saying.

What I said the other day was, or certainly intended to say, is that it's a distraction to worry about Governor Pritzker because it is -- a challenge to his signature isn't before me. It was you -- the issue is whether you can be on the ballot. And what they said, according to you, and --

MS. TILLMAN: Not according to me, you brought that conversation. I kept telling you that I'm here for due process violations. You kept bringing up state matters, which has nothing to do with the pleadings that are before you. You ruled on state issues. You did not even take a -- into consideration --

THE COURT: I --

MS. TILLMAN: You did not take into consideration the pleadings that are set before you right now.

THE COURT: I certainly hope that I have.

MS. TILLMAN: No, ma'am, you have not.

THE COURT: Well, I haven't issued an opinion yet.

MS. TILLMAN: Okay. So if we could stick to the pleadings as before you and not the state -- you even told me that I don't belong in this court, that I need to take it back to the state. I have jurisdiction to be here. One, if I didn't, I would have never made it to your courtroom because they would have dismissed it from the very beginning.

THE COURT: Well --

MS. TILLMAN: Two, I have --

THE COURT: -- no, that's not -- it's me that would have to dismiss it.

MS. TILLMAN: Right. Two, I have jurisdiction to be here because my due process has been violated under the Fourteenth Amendment and the First Amendment under Rule 42 USC 1983.

THE COURT: 1983 is a vehicle.

MS. TILLMAN: 1983 is a civil rights.

THE COURT: It is a civil rights vehicle that you can use if there is a violation of your rights by a state actor, whether it is a due process right or an equal protection right or a First Amendment right. So, that is correct.

MS. TILLMAN: So under the equal protection right, I was not treated the same as other candidates going through this

electoral process. Other candidates had access to the portal, which I did not. I was totally locked out from the beginning to the end. The window opened for me after the objection process was closed. I did not have an opportunity to object to anything. Nothing. I have the e-mail from the legal department. I have the e-mail from their legal counsel and ethic officers, and it says:

Hi, Dave, and all parties. I am sending this along to note that Candidate Tillman's inability to file documents through the petition and objection portal has been solved as of 4:05 p.m.

So that was November the 21st --

THE COURT: Correct.

MS. TILLMAN: -- at 4:05 p.m.

It goes on to say: I can confirm that up until this point she was unable to upload documents to the portal due to a coding error in our system that we have encountered in other cases. You may notice that Candidate Tillman is now listed as an attorney representing herself. In this case, that is the short-term fix we have discovered that solves this issue until the larger coding problem is solved. As a result, Candidate Tillman is able to file documents as of 4:05 p.m. today. It is true that the portal would not allow her prior to this point.

November the 21st at 4:05 p.m. was a Friday, close-of-business. The window for objecting to anything was

exhausted.

THE COURT: What did you want to file as an objection?

MS. TILLMAN: I wanted to file an objection to his petitions.

THE COURT: To?

MS. TILLMAN: To the petitions. I wanted to see his petitions. I wanted to participate in the process. I had no opportunity to participate.

THE COURT: Let me make sure I -- if I understand you. The objections that you wanted to file were to somebody else's candidacy petitions?

MS. TILLMAN: See, in the election process, they object to mine, I can object to theirs. The whole system is candidates objecting to each other petitions, whatever way it may be.

THE COURT: Okay.

MS. TILLMAN: But you have to have access to the petition, to the objection portal, to see what it is that you want to do. No one knows what they want to do until they actually have access to the portal. Once you have access to the portal, then you can go in and look and determine what it is that you want to do. I could not even look at the portal until after the process was over.

THE COURT: Okay. When you were able to look at the portal, did you see anything that you wanted to object to?

MS. TILLMAN: Yes.

THE COURT: What?

MS. TILLMAN: I think those are state issues, and I want to stick to my due process issues. Those are state issues. I'm here for my due process.

THE COURT: Well, if there wasn't anything when you did see it that you objected to, then I don't suppose you were harmed by it.

MS. TILLMAN: Ma'am, I was harmed because I did not have access to the portal to participate. If my opponent had access to the portal, I should have had equal access to the portal to participate.

THE COURT: I'm very sorry that you didn't have access to the portal. And if there's a problem there, they certainly should get it fixed.

MS. TILLMAN: So that was denial. I was denied my due process.

THE COURT: All right. I think I understand your -- what you're saying. All right. We will take that into consideration. Anything else?

MS. TILLMAN: So here it -- my introduction was: This action seeks declaratory and injunctive -- injunctive relief and damages under 42 USC 1983 for ongoing violations of the First and Fourteenth Amendment arising from defendants' exclusion of plaintiff from the election objection process.

Denial of reasonable continuances based -- biased treatment and deliberate interference to plaintiff's safety following an assault during an official board hearing, conduct that continues to impair plaintiff's ballot access for the March 17, 2026, Illinois primary election.

And then I asked for a temporary restraining order because my name was on the ballot. And so they would take it off and put it on, take it off and put it on because they said that I was incompetent. This is what they used. They said that I was incompetent and the reason I could not access the portal because I was incompetent and I did not know what I was doing.

And then the state -- the legal counsel after, say, 20 days later, after I'm continuously complaining throughout the process, from November the 3rd until November the 21st, I continuously asked for access so that I can participate in the process. I was told that I'm incompetent. We cannot help that you don't know what you're doing. That's why people that don't have a lawyer does not belong here. If you had a lawyer, then they would be able to access the portal. I'm not required to have a lawyer. By law, it is my right to defend myself *pro se*.

THE COURT: I certainly agree.

MS. TILLMAN: But they said that I was incompetent, and that's the only reason I could not access the portal.

Twenty days later, with my consistency of trying to

find other remedies for me to participate, the legal counsel and ethic officer finally did some research and said Ms. Tillman has been telling you all the truth the whole time when you all was considering her incompetent, she -- when she was blocked.

THE COURT: That's why I asked you what -- I certainly agree that that would have been offensive and that you should have been able to have access. I don't know how those things work. I probably would have had trouble getting access myself.

MS. TILLMAN: But I didn't have trouble getting access. I was blocked.

THE COURT: Okay. And that was why I asked you, when you finally did get access, what it is --

MS. TILLMAN: I did -- when I finally got access, I asked them could I have a continuance, could they give me time to actually respond to their objections. It was denied. So once they opened up the window for me to participate, they denied me any participation, telling me that the window is closed. The window is closed, so you cannot object to anything at this time. So you cannot block me and then tell me that I can't participate after it's over. You're punishing me for your error. They're punishing me for their error.

And my name is not off the ballot, I'm asking that it stay on the ballot. See, because they -- they need to cease in what they're doing. They go back and forth so it will look

like I'm incompetent. One minute they doing something when my name was off the ballot. Then when I file -- I filed a motion to have it put back on the ballot, then they put it back on the ballot. And then now I'm here saying, can you keep me on the ballot, but then they'll change it again and say, you're off the ballot. So that's confusing to the voters. I have thousands of signatures. That is confusing to the voters for them to continuously take me off, put me on, take me off, put me on.

THE COURT: Can you tell me what Ms. Tillman's status is?

MR. DIERKES: Your Honor, I haven't -- or my office hasn't really had a chance to talk with the Board about all this. My understanding just from looking at the paperwork before coming here this afternoon is that there was an objection filed to her papers --

THE COURT: Right.

MR. DIERKES: -- and that was sustained after a hearing before the Board. She had an opportunity to seek administrative review in the circuit court. She did that but then voluntarily dismissed it. So as far as I know, she's not on the ballot and not going to be on the ballot, and there's no flip-flopping on that. She went through the process and the objection was sustained.

MS. TILLMAN: Now do you hear what he said? I went

through the process. What process did I go through? I was blocked. What process did I go through? Every other candidate, senators, congressmens, Republican candidates for governor, Democratic candidate for governor, all went through the process. I was the only one blocked. I was the only one blocked. And I am the only Democratic opponent to Governor Pritzker. So everybody that's seeking to be on the ballot for the March 17, 2026, primary election all had the opportunity to participate in the objection process. I am the only candidate that was blocked.

THE COURT: Which is why I asked you --

MS. TILLMAN: And then he just said that I participated. When and how did I participate, sir?

MR. DIERKES: I've seen the paperwork. There was a hearing before the Illinois State Board of Elections and an opportunity to appeal.

MS. TILLMAN: How can I appeal it if I'm blocked? And it says right here from the legal department, it says: I am sending this along to note that Candidate Tillman inability to file documents through the petition and objection portal.

And let me mention, this is the only way to object or participate is through this objection portal. There's no other way.

THE COURT: Okay. And what I wanted to know is what you were not able to file that you wanted to file.

MS. TILLMAN: Ma'am, I don't know what I wanted to file because I couldn't see anything.

THE COURT: Well, you've seen things since then; right?

MS. TILLMAN: Since then, but it's no need for me to really try to scrutinize anything because it wouldn't matter. At this point, it does not matter what I see, what I want to object to because the window is closed. And when I looked at the petitions, there was many errors in his petitions.

THE COURT: In -- when you say "his."

MS. TILLMAN: In Governor Pritzker's petitions. When I did have the opportunity to look at the petitions, there was numerous errors that I could have objected to, had I had the opportunity.

THE COURT: Okay.

MS. TILLMAN: He had people that was not even registered voters from the State of Illinois. He had people from California, he had people from Texas circulating petitions, which is not a part of the process. His -- his -- his nomination papers would have been kicked out. And even though he is a standing governor, we all have to go through the process to get back on the ballot.

THE COURT: Right.

MS. TILLMAN: So had I been able to see that and object to that, he would be standing where I am right now

because his paperwork could have been kicked off the ballot for the errors that I did see. But I did not have the opportunity to even see it at the time to object to it. And when I did see it and realized that I would have objected to that, to get him placed off the ballot, I don't have the opportunity to do so because they say the window is closed.

MR. DIERKES: And, your Honor? I -- again, I don't really know the details here, so I'm hesitant to speak. Obviously I'm confused by what Ms. Tillman said --

MS. TILLMAN: How can you be confused? You're the attorney from --

THE REPORTER: I can't take both of you talking at the same time.

MR. DIERKES: I do believe I saw something, you know, when our Assistant Attorney General came in when Ms. Tillman had filed for administrative review, I believe one of the arguments was that that petition for administrative review was untimely, she didn't meet the statutory window. And I think I saw that she had attempted to file a petition for administrative review in the Circuit Court of Cook County through that portal. That may be what Ms. Tillman is trying to say. Obviously that would not be a --

MS. TILLMAN: And even when they opened the portal it was illusionary. It still did not properly work. So I would go in and try to find some -- file something, and this is what

would come up. Service error. Service error. So even when they said they opened it, I still had problems trying to upload things. So there was no access for me to participate.

THE COURT: Well, you were able to file a petition to review their finding on December 8th, I think it was, 7th or 8th, that you were not qualified to be on the ballot.

MS. TILLMAN: Ma'am, we're not talking about state issues, we're talking about my due process. It does not matter what they said about them signatures. Because I can't say the same thing about my opponent's signatures.

THE COURT: Okay.

MS. TILLMAN: So it doesn't matter what they say about my signatures because I don't have the opportunity to say the same thing about my opponent's signatures. So that's void.

THE COURT: Okay. I think that I have gotten as far as we're going to get today. We're getting repetitious. Okay.

MS. TILLMAN: Wait, can I finish?

THE COURT: Yes.

MS. TILLMAN: So by me being locked out of the petition objection portal during the objection window, it denied me notice and meaningful opportunity to be heard. It denied reasonable continuances, and it gave me an illusionary access. Then you have the Anderson-Burdick section, where it says, under *Anderson vs. Celebrezze*: Courts weigh the character and magnitude of the burden against the state's

interest. Here the burden is severe. The burden is severe. Plaintiff was wholly excluded from the objection process, portal lockout, denied continuances during an official hearing, and provided only illusionary access thereafter, foreclosing any meaningful opportunity to be heard. Severe burdens trigger strict scrutiny, which defendants, the State Board of Election, cannot meet because no compelling interest justifies candidate-specific exclusion without alternative or accommodations.

And after the multiple times that I asked for different accommodations, they refused. The accommodations gave me was, you're incompetent, and you don't belong here anyway.

Even under intermediate scrutiny, the challenged actions are not narrowly tailored and failed balancing because administrative convenience cannot outweigh constitutional rights and voter's choice.

Not only would you be closing me out, these -- I have thousands of voters' interests at stake here. We have over 7,000 voters' interests that are stakes, and their voice will be silenced because they will not have the opportunity to choose who they want to vote for. There's no other candidate on the ballot for the Democrats, so they will be forced to accept the one candidate that's there because me, the other candidate, has been blocked from participating. So that's

taking away the rights of the voters, the choice of the voters. The voters has been silenced. It's not about me, this is about the people that actually signed these petitions that wanted to have a voice when they go to the voting polls. When they go to the ballot on March 17, 2026, they want to be able to choose who they want to vote for.

And my name is on the ballot. I'm asking that it don't be taken off the ballot. When I filed the motion that I filed, they had taken my name off the ballot, so I filed the motion for my name to be placed back on the ballot. But since I filed this motion, again, the scenario has changed because they changed it at the whim whenever they want to change it, disregarding all laws and doing whatever it is that they want to do to protect the ballot to have only one candidate.

In the Republican ballot, they have at least seven people on the ballot so the people have a choice who they vote for on March 17, 2026. They have a choice of seven people that they can vote for.

On the Democrat side, what they're trying to do is take away the rights of the voters and give them only one person. That's not fair to the voters. We have millions of voters that want to have a choice in the Democratic process to choose whom they want to be their governor.

This is not a partisan election where only one, we don't have dictators and kings here, where there's only one

option. And the only one option is because the other candidate has been totally blocked. Rights denied. This is not something that I did that caused the injury. This is not something that I did to cause the harm. This is something that the State Board of Election has done.

Then it says: Severe burdens triggers strict scrutiny, which defendants cannot meet because no compelling interest justifies candidate-specific exclusion without notice, alternative, or accommodation. Even under intermediate scrutiny, the challenged actions are not narrowly tailored and failed balancing because administrative convenience cannot outweigh constitutional rights and voters' choice.

THE COURT: Can you tell me what you're quoting from?

MS. TILLMAN: Anderson-Burdick.

THE COURT: Oh, okay.

MS. TILLMAN: Anderson-Burdick. And if I can remember what I -- when I was researching law, in Westlaw and Nex -- Nex -- whatever that is, it stated that the federal courts cannot -- and I know you as a judge, you can do whatever you want to do, but it stated that the courts cannot rule without this consideration. They cannot overlook Anderson versus the Burdick.

Then: Constitutional rights outweigh administrative inconvenience. The public interest favors fair elections and voter's choice.

So, again, this is not about me, these are about the voter's choice. If you do not rule that my name stays on the ballot, you are silencing thousands, even millions, of voters. The Republican side has the opportunity to choose. The Democratic side should have the opportunity to choose as well.

The ballot preparation is time-sensitive. Without immediate relief, constitutional injuries will be concrete. We cannot reverse this.

So I'm not asking that my name be placed on the ballot. Now I'm asking that it stay on the ballot. Because they flip-flop. And that would be an incorrect statement anyway to say can my name be placed on the ballot because the ballots are not printed. So since the ballots are not printed, I'm not asking you to do anything that would obstruct the -- or delay the election process. I'm not asking you to reprint ballots. I'm not asking you to undo anything. These ballots has not been printed, so the state will have no harm done to them to say that my name remain on the ballot. There's no injury to the state, none whatsoever.

But there will be injury to me if the courts don't allow for my name to stay on the ballot, and thousands, even millions, of voters, we have over eight million and some change registered voters in the State of Illinois. It would be a shame that they can vote and have a choice to vote on the Republican side but the Democratic side they have no choice.

Absolutely no choice at all if my name don't remain on the ballot. These people was out in the cold signing petitions to have the right to vote for whom they choose.

And so the state cannot cause injury to a person and then try to harm them any more by keeping them off the ballot. So now you adding insult to injury. You denied the person's rights, the candidate's rights, to be heard in the objection process. And then they go even further to now try to stop the voters from being heard by keeping the candidate off the ballot.

Constitutional rights and fair elections outweighs administrative inconvenience. Voters benefit from choice. Voters -- the voters benefit from choice. And when they say constitutional rights and fair elections? That's not a fair election, for one candidate out of hundreds to be blocked from the whole process. And then there is no administrative inconvenience to the State Board of Election to leave my name on the ballot. There's no inconvenience at all. None. They will be not -- they will not be harmed in any shape, form, or fashion. None. But the voters will because they won't have a choice. And it will be sad to see that the Republicans have a choice and the Democrats don't.

I was subject to bias treatment. I should have been given the same opportunity as every other candidate. Even if they believe that I would not have prevailed, even if they

believe that I had no chances at all of winning the election, I still should have had the opportunity to participate in the process, just like the other hundreds of candidates did.

Not only was that, it was a no-attorney bar. You cannot exclude a person from participating because they're not an attorney. So on top of the blockage from participating to the objections, they also told me that I shouldn't be participating because I'm not an attorney. You don't belong here. Quote, you don't belong here because you're not an attorney, and that's why you cannot access the portal. Quote, you're incompetent. But then to fix it, it says: Tillman is now listed as an attorney. I'm not an attorney. Had I listed myself as an attorney, it would have been considered fraud.

THE COURT: I think they were just trying to figure out a way so you could get access to the portal.

MS. TILLMAN: Ma'am, regardless of what they was trying to do -- okay, let's flip that. I was trying to get access. I didn't get it. Can you justify that?

THE COURT: I'm not answering your questions.

MS. TILLMAN: I mean, you just justified their error. You just justified their error, what they were trying to do. I don't care what they was trying to do. The law does not care what they was trying to do. They caused harm and injury, and they did not give me my due process. And we do not have any parallel -- we don't have any parallel cases here. We don't

have any parallel pleadings here. We have one pleading.

And so when you focus on things that the state is talking about, that's not what's before you. So you have to concentrate on the pleadings -- well, you don't have to do anything, but I would wish that you would -- I do believe federal law states that the federal judges has to rule on pleadings that's before them.

THE COURT: Correct.

MS. TILLMAN: And nowhere in my pleading am I talking about signatures. So you told me the other day that you're dismissing my case because the state said I don't have enough signatures.

THE COURT: Well, what I was asking was whether you had --

MS. TILLMAN: No, that's what you said, quote. That's what you said to me. And we're not pleading signatures here. That's not even, as far as the federal law is concerned, that's not even up for discussion. Because you're supposed to rule on things that's being pled before you. And nowhere in my pleading am I asking you to address anything about signatures. I didn't ask that.

So it's like you're making your own pleadings. You're making me have pleadings that I don't have before you. And this e-mail confirms. So I'm not just stating something. Their legal department confirms --

THE COURT: Right, I've read that.

MS. TILLMAN: -- that I was locked out. Confirming portal denial lockout. Non-attorney denial from November the 3rd to November the 21st. There is no solution for that. That cannot be fixed.

But my name should not be removed from the ballot. When these ballots print, my name should remain, my name should be printed on the ballot so that the voters can have a fair choice to elect who they want to. The state cannot give any reason that would justify blocking me from the process. There's no -- nothing that they can say that can justify them blocking me from the process and then wanting to remove me from the ballot as well. For what reason?

And even if they say that I didn't have enough signatures, I didn't have the opportunity to object to that. I didn't have the opportunity to say, well, no, I don't think so. I think I had enough. Which I know I had enough because I had 1,053 signatures above the minimum amount required to qualify me for the ballot. I turned in 2,253 signatures above the minimum 5,000 that was required. The only amount that was required was 5,000 signatures. I turned in 7,253. Of that 7,253, 6,054 of them, 53 or 54 of them, were served by registered voters. So I turned in a thousand above the minimum requirement of 5,000.

So there's no reason that I should not be on -- my

name should not remain on this ballot. And if they feel that it should be removed, I didn't get the opportunity to say, hey, I disagree with you when you say I didn't have enough. What I turned in was more than enough. The signatures that I turned in was more than enough to qualify me for the ballot. They're not saying, hey, Patricia Tillman turned in 4,000 signatures and the minimum requirement is 5,000 signatures.

THE COURT: Well, they said you were a few hundred short, which was the reason why when they made their findings you could have gone to the Circuit Court of Cook County and challenged it.

MS. TILLMAN: No, I can come to the federal courts because my due process rights were violated. I don't understand the justification of their wrongdoing but no justification for the harm that they have caused the voters.

THE COURT: Okay.

MS. TILLMAN: Then, these defendants, they acted under color of state law by administering election processes, controlling the hearing environment, and enforcing access decisions. So access to these portals are their decisions. They control it. So if they're controlling it, they supposed to make it accessible to everyone.

THE COURT: Well, I certainly seem -- sounds like that you're correct about that, that they -- if that was important in terms of being able to --

MS. TILLMAN: If?

THE COURT: -- make a challenge, then, and I guess it was, then you should, I would think, have had access. Why you didn't, I don't know.

MS. TILLMAN: Ma'am.

THE COURT: Apparently they --

MS. TILLMAN: Here go the legal department. Let me read it to you again why I didn't.

THE COURT: No, you really don't need to read it to me again.

MS. TILLMAN: But you're saying you don't know why. The legal -- their legal department --

THE COURT: Okay. They apparently thought that something about that somebody had to be an attorney, and they --

MS. TILLMAN: No, they didn't clearly think that. They clearly thought that I was incompetent. They clearly thought that there should be only one Democrat in this race. You, yourself, told me yesterday that you pretty much feel the same way because you told me --

THE COURT: I most certainly did not.

MS. TILLMAN: -- you told me, we all know that Governor Pritzker has enough signatures. You do not.

THE COURT: I do not, and I did not say that.

MS. TILLMAN: You said that.

THE COURT: And I don't know that. And I just know that his signatures are not the issue here.

MS. TILLMAN: My signatures are the not the issue here either because I'm here on due process violations.

THE COURT: Okay.

MS. TILLMAN: My signatures -- and that's what I'm saying, you're ruling on things that's not pled before you. You keep talking about signatures. We're talking about my due process violations and then deliberate interference.

Defendants acted under color of state law. They were aware that I was attacked at the hearing and did nothing. They did nothing to give me any medical treatment. They did nothing to get any police there. They did nothing. And I was attacked because I kept asking for other avenues to participate in the process. I would not give up on asking how can I participate in this process.

They then told me that I talk too much, I need to know when to be quiet, I need to know when to shut up. We are not giving you any other avenues. No other way to access. There is no other options for you.

THE COURT: This was on the --

MS. TILLMAN: November 18th.

THE COURT: -- 18th? And there was a hearing, somebody was on the phone, and you and an attorney for the objector were present; is that right?

MS. TILLMAN: Yes.
THE COURT: And it was to set a date? Was that correct?
MS. TILLMAN: It was to set a date. And even then I'm telling him I cannot access the portal.
THE COURT: And you told them that?
MS. TILLMAN: I told them that that day. We were sitting there. They're looking through the portal. I'm there with my laptop and they're doing their thing. So I'm telling them, I cannot see what you all are seeing. I am blocked. And they're telling me, no, you're, literally, you are incompetent. We cannot help that you don't know how to navigate through this portal. It is you that cannot navigate through the portal.
THE COURT: Could you explain what the portal is to me, please?
MS. TILLMAN: So, you have to go onto your computer.
THE COURT: Okay.
MS. TILLMAN: You have to log in.
THE COURT: Yes.
MS. TILLMAN: And when you log in, all the information from -- for every candidate is in there.
THE COURT: Okay.
MS. TILLMAN: Every candidate. And that is the portal where, when you log in, you can look at everybody's information; their paperwork, their petitions, their

objections, their subpoenas, their -- their appearances, their -- just everything that has to do with the election process is inside of this portal. If you don't have access to this portal, you don't know what's going on. You're clueless. This is the portal that everybody goes into in order to do anything. You cannot do anything without this portal. There's no way of doing anything if you cannot get into this portal.

So day in, day out, they might send you something 3:00 o'clock in the morning, because it's such a fast process, for you to answer to or object to. And people go on this portal, and they communicate through this portal. That is the communication process.

THE COURT: Okay.

MS. TILLMAN: So without the portal, you can't communicate with anybody.

THE COURT: Eventually you were able to get in?

MS. TILLMAN: The window was closed. There was no more communicating about anything when they opened it up to me. When they opened it up to me -- it's like if we out there on that lake and we're about to get on the boat and we're waiting in line to get on the boat. Now they going to open up the gate for everybody to ride. So they went out there, they cruised, they came back. You wanted to get on this boat but they keep the chain there so you can't get on. So when they finally, now, you see the ship coming back, going forward, going back,

going forward, going back, but they still holding you behind this chain. Now, you've been standing there telling them you want to get on this boat. Twelve hours has gone by but they still have you standing there. When the hours are up and they're closing, and you still at that gate, they opened it up, and you get ready to get on board, and they tell you it's closed. But you been there that whole time trying to get a ride, but they wouldn't let you on. So now, when they opened up the gate, there's no more rides. It's over. It's over for the season. That was the last day. And you really wanted to ride, but there's no more rides, and you can't get on until next year.

So this is not -- I can't even repeat this until four years from now. And even then, people are going to scrutinize, oh, well, she didn't have enough signatures to get on the ballot. Oh, she did something wrong. Oh, she was incompetent, she didn't even know how to navigate the portal to stay on the ballot. So these are the rumors that's going around because I didn't have access. This is what's in the media. This is them saying Patricia Tillman has been tossed off the ballot because of incompetency. It's not saying Patricia Tillman was excluded from the ballot because of an error due to the Board of Elections. It's not saying Patricia Tillman was blocked from the objection process, so, therefore, she will not be on the ballot for the March 17, 2026, election. It's not

acknowledging their error at all.

Not only that, we're talking about wealth-based barriers to this election. Because even at the hearings, they -- I was told, you're not a billionaire, so you don't belong here.

THE COURT: Somebody said that to you?

MS. TILLMAN: Yes. Can I take a break?

(Brief recess.)

THE CLERK: Court resumes in session.

MS. TILLMAN: I apologize.

THE CLERK: 26 CV 218, Tillman versus Illinois State Board of Elections.

THE COURT: Is there something more to be said?

MS. TILLMAN: I just want to say that my due process rights was violated because I was not treated equally as the other candidates.

THE COURT: Okay.

MS. TILLMAN: And I'm just asking that the Court orders that my name remain on the ballot for printing for the March 17, 2026, election. That my name remain on the ballot.

THE COURT: Thank you. I will consider your arguments.

THE CLERK: All rise. Court is adjourned.

(Proceedings concluded at 2:11 p.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Sandra M. Tennis* *April 14, 2026*

Sandra M. Tennis Date
Official Court Reporter