# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

FILED

SEP 28 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**PATRICIA L. TILLMAN and**
**JOSEPH L. MOSLEY, Candidates**

**for Governor and Lieutenant Governor**

Plaintiffs,

v.

**ILLINOIS STATE BOARD OF ELECTIONS, et al.,**

Defendants.

**Case No. 1:26-cv-00218**
**Hon. Elaine E. Bucklo**

# PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL, RELIEF FROM JUDGMENT UNDER RULE 60(b)(1), AND ALTERNATIVE INDICATIVE RULING UNDER RULE 62.1

## EMERGENCY RELIEF REQUESTED — NOVEMBER 3, 2026 GENERAL-ELECTION BALLOT PLACEMENT

Plaintiffs Patricia L. Tillman and Joseph L. Mosely, proceeding pro se, respectfully move this Court pursuant to Federal Rules of Civil Procedure 60(b)(1), 62(c), 62.1, and 65 for emergency equitable relief necessary to preserve meaningful judicial review and effective ballot relief before the **November 3, 2026 Illinois General Election**.

As **primary emergency relief**, Plaintiffs request an order directing the appropriate Illinois election officials to take all legally necessary and practicable steps to place **Patricia L. Tillman as a candidate for Governor of Illinois and Joseph L. Mosely as a candidate for Lieutenant Governor of Illinois on the November 3, 2026 General Election ballot**, subject to the Court's determination that such relief is legally available.

Alternatively, Plaintiffs request an immediate injunction preserving the status quo and prohibiting Defendants from taking further action that would render effective ballot relief impossible while this Court and the Seventh Circuit adjudicate Plaintiffs' constitutional claims.

Plaintiffs state as follows.

# I. EMERGENCY NATURE OF THE MOTION

1. The November 3, 2026 General Election is approaching, and election administration is proceeding on a schedule under which delay may render meaningful ballot relief practically impossible.
2. Plaintiffs therefore seek immediate consideration of this motion.
3. Plaintiff Tillman's underlying action asserted federal constitutional injuries arising from the administration of Illinois's election-objection process, including alleged denial of meaningful participation, unequal access to the State's Petition and Objection Portal, procedural due process, equal protection, First Amendment rights, and conduct allegedly actionable under 42 U.S.C. §1983.
4. Plaintiffs do not ask this Court merely to reconsider whether Plaintiff possessed a particular numerical quantity of nomination signatures.
5. Plaintiffs contend that the independent federal constitutional question is whether state actors denied Plaintiff constitutionally adequate and equal participation in the governmental procedure used to determine her ballot eligibility.
6. Because an election cannot effectively be rerun after ballots are cast, Plaintiffs contend that immediate judicial consideration is necessary.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

**PATRICIA L. TILLMAN and**
**JOSEPH L. MOSELY,**

Plaintiffs,

v.

**ILLINOIS STATE BOARD OF ELECTIONS, et al.,** ISBE Board Members, Laura K Donahue, Rick S. Terven Sr., Jennifer M. Ballard Croft, Tonya L. Genovese, Catherine S. McCrory, Jack Vrett, Legal Counsel II and Ehics Illinois State Board of Elections, Sean Sarcu, David Herman, K Michael Tecson, Kevin M Morphew, Attorney General Kwame Raoul, Lee B Stark, Wallace Gator Bradley, Chistina D. Cray and Casandra B. Watson

Defendants.

**Case No. 26-CV-218**
**Hon. Elaine E. Bucklo**

**PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL PURSUANT TO FED. R. CIV. P. 62(d), FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b), AND, TO THE EXTENT NECESSARY, FOR AN INDICATIVE RULING PURSUANT TO FED. R. CIV. P. 62.1**

**EMERGENCY RELIEF REQUESTED — DECISION REQUESTED ON OR BEFORE SEPTEMBER 26, 2026**

Plaintiffs Patricia L. Tillman and Joseph L. Mosely, proceeding pro se, respectfully request emergency relief necessary to preserve meaningful judicial review and effective ballot relief before the November 3, 2026 General Election.

Plaintiffs request that this Court immediately enter an injunction directing the appropriate Illinois election officials, to the extent legally authorized on the present record, to place Plaintiffs Patricia L. Tillman and Joseph L. Mosely on the November 3, 2026 General Election ballot as candidates for Governor and Lieutenant Governor of Illinois. contradiction inside the written order itself

Near the beginning, Judge Bucklo wrote:

"The gravamen of plaintiff's complaint is that defendants unlawfully prevented her from participating in objection proceedings

But several pages later, the order states that:

"the essence of her claim is that defendants interfered ... with her ability to obtain the 5,000 valid signature

Those formulations are materially different.

And the transcript shows that I expressly objected to the second characterization:

"My signatures are not the issue here either because I'm here on due process violations. "I then said:

"you're ruling on things that's not pled before you. You keep talking about signatures. We're talking about my due process violations."

See exhibits c and d, **order-versus-transcript comparison** rather than merely an allegation that Judge Bucklo misunderstood me.

**Alternatively,** if the Court determines that immediate ballot placement cannot presently be ordered, Plaintiffs request an immediate preservation injunction prohibiting Defendants from taking any action that would render effective ballot relief impossible while this Court and the United States Court of Appeals for the Seventh Circuit consider Plaintiffs' constitutional claims.

Plaintiffs further request relief from the January 16, 2026 judgment pursuant to Rule 60(b)(1) to the extent the judgment resulted from a mistake concerning the nature or legal treatment of Plaintiffs' independently pleaded federal constitutional claims. The Supreme Court has held that

"mistake" under Rule 60(b)(1) includes a judge's errors of law. *Kemp v. United States*, 596 U.S. 528 (2022). (Supreme Court)

If the pending appeal prevents this Court from granting any portion of the requested Rule 60(b) relief, Plaintiffs alternatively request an indicative ruling under Rule 62.1 that the motion raises a substantial issue or that the Court would grant relief if the Seventh Circuit remands for that purpose. Rule 62.1 expressly provides that procedure when a pending appeal prevents the district court from granting requested relief. (United States Courts)

---

## 1. EMERGENCY NATURE OF THE MOTION

1. The Illinois General Election is scheduled for **November 3, 2026**.
2. Plaintiffs seek immediate relief because election administration is proceeding and the passage of additional time threatens to make meaningful ballot relief practically impossible.
3. Plaintiff Tillman alleges that the constitutional injury underlying this litigation occurred during the process determining whether she could participate as a candidate in Illinois's 2026 gubernatorial election.
4. Plaintiffs do not contend that the existence of a constitutional claim automatically requires ballot placement. Rather, Plaintiffs request that the Court determine whether the alleged denial of meaningful and equal participation in the election-objection process warrants emergency equitable relief.
5. Because the election is approaching, Plaintiffs request a decision on or before **September 28, 2026**, or as soon thereafter as the Court can reasonably act.

---

## 2. PROCEDURAL HISTORY AND PENDING APPEAL

6. Plaintiff Tillman sought federal relief under 42 U.S.C. §1983 arising from alleged violations of the First and Fourteenth Amendments associated with Illinois's candidate-objection process.
7. The district court conducted proceedings on January 13 and January 16, 2026.
8. On January 16, 2026, the Court dismissed the federal action and denied emergency injunctive relief.
9. Plaintiffs appealed.

10. That appeal is pending in the United States Court of Appeals for the Seventh Circuit as **Tillman v. Illinois State Board of Elections, Appeal No. 26-1108**.

11. Plaintiffs represent to this Court that, as of the filing of this motion, the Seventh Circuit has entered **no final disposition dismissing or deciding that appeal and no mandate has issued**.

12. Plaintiffs previously sought emergency relief relating to the March 17, 2026 primary election. Plaintiffs disclose that previous request and do not attempt to characterize the present motion as the first request for emergency appellate relief.

13. The present emergency concerns Plaintiffs' contention that meaningful relief must now be preserved before the **November 3, 2026 General Election**.

---

**3. MATERIAL FACTS ESTABLISHED BY THE CERTIFIED TRANSCRIPTS**

14. The certified January 13, 2026 transcript materially clarifies the constitutional theory Plaintiff Tillman presented to this Court.

15. Plaintiff told the Court that she had not received the same opportunity to participate in the election-objection process.

16. During that discussion, the Court stated that Plaintiff "have to have believed that Governor Pritzker has sufficient signatures."

17. Plaintiff immediately responded:

"whether he do or don't, I still have that due process to be able to participate in the election process."

That exchange is contained in the certified transcript.

18. Plaintiff respectfully submits that this exchange demonstrates that her federal constitutional claim was **not merely a disagreement over the number of signatures ultimately determined valid**.

19. Her asserted injury was the denial of equal and meaningful participation in the governmental process used to adjudicate candidate objections through a machine that was controlled by the Illinois State board of Elections. They also stated you can not participate because you are not an attorney. See exhibit A 1,2 Rules of Procedure, 3. Appearance, plaintiff was not able to participate, a blockage disguised as an error. See exhibit b,

20. The Court also stated concerning the portal problem:

"they obviously made a mistake."

21. Later during the January 13 proceeding, the Court stated that it wanted to hear from the opposing side concerning "the issues about the portal" and whether Plaintiff had an opportunity to file a **"meaningful objection."**

22. These statements demonstrate that meaningful access to the portal and objection procedure was squarely before the Court.

---

**4. THE PORTAL EXCLUSION AND DENIAL OF MEANINGFUL PARTICIPATION**

23. Plaintiff alleges that she was unable to use the ISBE Petition and Objection Portal during a material portion of the operative objection period.

24. Plaintiff presented an ISBE communication stating that she had been unable to upload documents because of a coding error and describing a temporary workaround involving identifying Plaintiff in the system as an attorney representing herself.

25. Plaintiff's constitutional contention is not merely that a computer malfunction occurred.

26. Plaintiff contends that competing candidates, both Democrats, Republicans, Hearing officers, Illinois state Board of Elections Board members and opposing Attorney, participants were afforded meaningful access to the governmental election procedure machine, while Plaintiff was unable to participate in that same exact machinery on materially equal terms. They continued to file , object, rule on, litigate, prevail, advance, in a machine controlled by the Illinois state board of elections, how is it that the same machine that worked for every other candidate only failed to work for the only Democratic, African American, opponent to the incumbent JB Pritzker., and only woman in the entire Illinois Gubernatorial race. It was not an error it was intentional. And it was not allegedly restored until after the objection process had expired.

27. Plaintiff further alleges that access was not effectively restored until after critical objection opportunities had expired.

28. The January 13 transcript records Plaintiff telling the Court:

"After the window was over. After all the objections, and everything, was over with, they allowed me to get in."

29. Plaintiff therefore contends that eventual technical access did not cure the constitutional injury if the legally meaningful opportunity to participate had already passed.

**5. LIKELIHOOD OF SUCCESS ON THE CONSTITUTIONAL CLAIMS**

30. Plaintiffs acknowledge that emergency injunctive relief is extraordinary and that they bear the burden of establishing entitlement to that relief.

31. Plaintiff's constitutional theory should be distinguished from the state-law question concerning how many petition signatures ultimately survived objection.

32. The constitutional question presented is whether state actors administering an election may provide materially unequal access to a candidate-objection process and then rely upon the result of that allegedly unequal process in determining ballot eligibility.

33. Plaintiff presented documentary evidence from ISBE itself concerning the coding problem.

34. The Court recognized that a mistake had occurred and separately identified whether Plaintiff had been afforded a meaningful opportunity to object as an issue requiring attention.

35. Plaintiff respectfully submits that these facts required independent adjudication of the federal constitutional process claim rather than treating the ultimate state signature determination as dispositive of the separate constitutional question.

36. Federal procedure is governed primarily by federal law, not Illinois procedural statutes.
37. The strongest authority is the Supreme Court's **party-presentation principle**.

38.1. *United States v. Sineneng-Smith*, 590 U.S. 371 (2020)

39. The Supreme Court explained that the American adversarial system ordinarily relies on **the parties to frame the issues for decision**, while courts serve as neutral arbiters of the matters the parties present. It held that a court's drastic departure from the issues framed by the parties can constitute an **abuse of discretion**. Supreme Court
40. That is probably your strongest Supreme Court authority.

41.2. *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)

42. *Greenlaw* likewise explains that courts ordinarily rely on the parties to frame the issues and maintain the role of neutral arbiter.
43. The underlying principle is particularly useful to your argument: the court ordinarily should not transform litigation into a materially different controversy that the parties did not present.

### 44.3. Federal Rules 7 and 8

45. Rule **7(b)(1)** requires a motion requesting an order to state **with particularity the grounds** for the requested order and the relief sought. Legal Information Institute
46. Rule **8(a)** similarly requires a pleading to state the claim showing entitlement to relief and demand the relief sought. Legal Information Institute
47. These rules help establish what issues and claims the parties actually placed before the court.
48. But be careful with **Rule 54(c)**. It says that, except for default judgments, a final judgment should grant the relief to which a party is entitled even if the party did not demand that particular relief. Legal Information Institute So Rule 54(c) means you should **not** argue that a federal judge can never consider anything beyond the exact words of the prayer for relief.

### 49.THE DISTRICT COURT DEPARTED FROM THE QUESTIONS PRESENTED BY THE PARTIES AND ADJUDICATED A MATERIALLY DIFFERENT CONTROVERSY

50. Plaintiff respectfully submits that the Court's January 16, 2026 disposition departed from the federal constitutional controversy actually presented for adjudication.
51. Under the Supreme Court's party-presentation principle, federal courts ordinarily rely upon the parties to frame the issues for decision and act as neutral arbiters of the matters presented. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). A sufficiently drastic departure from that principle may constitute an abuse of discretion. *Sineneng-Smith*, 590 U.S. at 375–80.
52. Plaintiff's federal action presented constitutional claims under 42 U.S.C. §1983 arising from alleged violations of procedural due process, equal protection, First Amendment rights, and denial of meaningful and equal participation in the State's election-objection procedure.
53. Plaintiff did not present an independent state-law claim asking this Court to conduct a signature examination or adjudicate whether Plaintiff possessed 5,000 valid nomination signatures.
54. Plaintiff acknowledges that the Court was permitted to consider the underlying state election proceedings where relevant as factual background, or where necessary to decide jurisdiction, standing, causation, remedy, or the federal constitutional claims actually presented. Plaintiff does not contend otherwise.
55. **The alleged error is that state-law signature sufficiency and related state-election matters allegedly became a substitute for adjudication of the federal constitutional controversy Plaintiff actually presented.**
56. This distinction was expressly preserved during the proceedings. Plaintiff told the Court: **"My signatures are not the issue here either because I'm here on due process violations,"** and further objected that the Court was addressing matters "not pled before you." eastern 1
57. Plaintiff again stated: **"I kept telling you that I'm here for due process violations. You kept bringing up state matters, which has nothing to do with the pleadings that are before you."** eastern 2

58. Plaintiff subsequently stated: **"nowhere in my pleading am I talking about signatures,"** and **"nowhere in my pleading am I asking you to address anything about signatures. I didn't ask that."** eastern 1
59. The written Order itself creates a material issue concerning the characterization of Plaintiff's claim. The Order initially characterized the gravamen of Plaintiff's complaint as Defendants allegedly preventing her from participating in the objection proceedings, but subsequently characterized the "essence" of the action as interference with Plaintiff's ability to obtain the 5,000 valid signatures required for ballot placement.
60. Plaintiff respectfully submits that those are materially different controversies. The former concerns the constitutionality of the governmental process afforded Plaintiff; the latter concerns compliance with substantive state ballot-qualification requirements.
61. Under *Sineneng-Smith* and *Greenlaw*, Plaintiff respectfully submits that the Court should adjudicate the controversy framed by the parties rather than substitute a materially different controversy for the constitutional claims presented.
62. Plaintiff therefore requests relief under Rule 60(b)(1) to the extent the judgment resulted from a judicial mistake concerning the claims actually presented. See *Kemp v. United States*, 596 U.S. 528 (2022). Alternatively, because Plaintiff represents that Appeal No. 26-1108 remains pending, Plaintiff requests an indicative ruling under Rule 62.1 that the motion raises a substantial issue and/or that appropriate relief would be granted upon remand.
63.

Plaintiff does **not** contend that Governor Pritzker's signature sufficiency itself determines Plaintiff's eligibility. The significance of the January 13 exchange is that Plaintiff immediately distinguished the opponent's signatures from her own asserted constitutional right to participate meaningfully in the process. **THE DISTRICT COURT DEPARTED FROM THE QUESTIONS PRESENTED BY THE PARTIES AND ADJUDICATED A MATERIALLY DIFFERENT CONTROVERSY**

Plaintiff respectfully submits that the Court's January 16, 2026 disposition departed from the federal constitutional controversy actually presented for adjudication.

Under the Supreme Court's party-presentation principle, federal courts ordinarily rely upon the parties to frame the issues for decision and act as neutral arbiters of the matters presented. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). A sufficiently drastic departure from that principle may constitute an abuse of discretion. *Sineneng-Smith*, 590 U.S. at 375–80.

Plaintiff's federal action presented constitutional claims under 42 U.S.C. §1983 arising from alleged violations of procedural due process, equal protection, First Amendment rights, and denial of meaningful and equal participation in the State's election-objection procedure.

Plaintiff did not present an independent state-law claim asking this Court to conduct a signature examination or adjudicate whether Plaintiff possessed 5,000 valid nomination signatures.

Plaintiff acknowledges that the Court was permitted to consider the underlying state election proceedings where relevant as factual background, or where necessary to decide jurisdiction, standing, causation, remedy, or the federal constitutional claims actually presented. Plaintiff does not contend otherwise.

**The alleged error is that state-law signature sufficiency and related state-election matters became a substitute for adjudication of the federal constitutional controversy Plaintiff actually presented.**

This distinction was expressly preserved during the proceedings. Plaintiff told the Court: **"My signatures are not the issue here either because I'm here on due process violations,"** and further objected that the Court was addressing matters "not pled before you."

Plaintiff again stated: **"I kept telling you that I'm here for due process violations. You kept bringing up state matters, which has nothing to do with the pleadings that are before you."** eastern 2

Plaintiff subsequently stated: **"nowhere in my pleading am I talking about signatures,"** and **"nowhere in my pleading am I asking you to address anything about signatures. I didn't ask that."** eastern 1

The written Order itself creates a material issue concerning the characterization of Plaintiff's claim. The Order initially characterized the gravamen of Plaintiff's complaint as Defendants allegedly preventing her from participating in the objection proceedings, but subsequently characterized the "essence" of the action as interference with Plaintiff's ability to obtain the 5,000 valid signatures required for ballot placement.

Plaintiff respectfully submits that those are materially different controversies. The former concerns the constitutionality of the governmental process afforded Plaintiff; the latter concerns compliance with substantive state ballot-qualification requirements.

Under *Sineneng-Smith* and *Greenlaw*, Plaintiff respectfully submits that the Court should adjudicate the controversy framed by the parties rather than substitute a materially different controversy for the constitutional claims presented.

Plaintiff therefore requests relief under Rule 60(b)(1) to the extent the judgment resulted from a judicial mistake concerning the claims actually presented. See *Kemp v. United States*, 596 U.S. 528 (2022). Alternatively, because Plaintiff represents that Appeal No. 26-1108 remains pending, Plaintiff requests an indicative ruling under Rule 62.1 that the motion raises a substantial issue and/or that appropriate relief would be granted upon remand

**"Although the District Court could consider relevant state-election law and proceedings as necessary to adjudicate the federal constitutional claims, Plaintiff respectfully submits that**

**the Court could not properly substitute an unpresented state-law signature controversy for the federal constitutional controversy framed by Plaintiff and make that substituted controversy dispositive without affording adjudication of the claims actually presented."**

That puts *Sineneng-Smith* and *Greenlaw* behind the precise argument your transcripts support.

64.

---

## 6. IRREPARABLE INJURY AND LOSS OF EFFECTIVE ELECTION RELIEF

37. Elections occur on fixed dates.
38. Once the November 3, 2026 General Election occurs, an order entered afterward cannot recreate the opportunity to appear before voters on that ballot.
39. Plaintiffs therefore contend that the continued loss of an opportunity to compete for elected office constitutes injury incapable of complete repair through an ordinary later damages award.
40. The requested emergency relief concerns political participation, candidate access, and asserted constitutional rights.
41. Plaintiffs therefore request immediate judicial consideration before the passage of time renders the requested election relief impossible.

---

## 7. WHY IMMEDIATE RELIEF IS NECESSARY BEFORE THE NOVEMBER 3 ELECTION

42. November 3, 2026 is approximately five weeks away.
43. Plaintiffs recognize that election officials have administrative responsibilities concerning ballot preparation, distribution, early voting, and election administration.
44. For that reason, Plaintiffs seek a ruling immediately rather than waiting until the eve of Election Day.
45. Plaintiffs request immediate relief now so that, if the Court concludes that effective relief is legally warranted, election officials have the maximum practicable time to implement the Court's order.
46. Plaintiffs further request alternative preservation relief if immediate ballot placement cannot presently be ordered.

---

## 8. WHY THE REQUESTED RELIEF PROTECTS RATHER THAN DISRUPTS THE ELECTION

47. Plaintiffs acknowledge that federal courts exercise special caution before altering election procedures close to an election.

48. The Seventh Circuit recently emphasized that election-related injunctions can create serious disruption when federal judicial intervention occurs after voting has begun or otherwise changes election rules midstream. (Seventh Circuit Court of Appeals)

49. Plaintiffs therefore do not ask the Court to disregard election-administration concerns.

50. Instead, Plaintiffs request immediate adjudication now and contend that prompt resolution would minimize uncertainty compared with delaying consideration until even closer to Election Day.

51. Plaintiffs request that the Court obtain from the appropriate election officials, if necessary, immediate information concerning ballot-production status and the practical deadline for implementing any ballot-related order.

52. Plaintiffs alternatively request preservation relief designed to maintain the possibility of effective judicial relief without unnecessarily disrupting election administration.

---

## 9. AUTHORITY UNDER RULE 62(d)

53. Federal Rule of Civil Procedure 62(d) provides that while an appeal is pending from a judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the district court may suspend, modify, restore, or grant an injunction. (United States Courts)

54. Plaintiffs' pending appeal arises from, among other things, the denial of emergency injunctive relief.

55. Accordingly, Plaintiffs respectfully invoke Rule 62(d) as authority for appropriate injunctive relief during the pending appeal.

56. Plaintiffs request that the Court exercise that authority to preserve effective judicial relief and, if the Court determines the requirements for such relief have been satisfied, grant appropriate ballot-related injunctive relief.

---

## 10. RULE 60(b) GROUNDS

57. Plaintiffs additionally seek relief under Federal Rule of Civil Procedure 60(b)(1).

58. Rule 60(b)(1) permits relief from a final judgment based upon "mistake."

59. The Supreme Court has held that the term encompasses a judge's legal errors. *Kemp v. United States*, 596 U.S. 528 (2022). (Supreme Court)

60. Plaintiff contends that the judgment materially misunderstood or failed independently to adjudicate the constitutional nature of her procedural-access claim.

61. Specifically, Plaintiff contends that her federal claim was not print 1.docx

**"ISBE counted my signatures incorrectly."**

62. Her independently asserted constitutional claim was:

**"State officials denied me meaningful and equal participation in the election-objection procedure itself, and the State thereafter relied upon the product of that unequal procedure to determine my ballot eligibility."**

63. The certified transcript demonstrates that Plaintiff expressly made this distinction during the hearing. See exhibit c transcript from January 13, 2026 and Exhibit d transcript from January 16, 2026

64. Plaintiff therefore requests relief under Rule 60(b)(1) to the extent the judgment resulted from a mistake concerning the nature or legal treatment of that federal claim.

---

**11. ALTERNATIVE REQUEST UNDER RULE 62.1**

65. Plaintiffs recognize that Appeal No. 26-1108 remains pending.

66. Rule 62.1 provides a mechanism where a timely motion seeks relief that the district court lacks authority to grant because an appeal has already been docketed.

67. In that circumstance, the Court may defer consideration, deny the motion, state that it would grant the motion if the Court of Appeals remands, or state that the motion raises a substantial issue. (United States Courts)

68. Therefore, to the extent the pending appeal prevents this Court from granting any requested Rule 60(b) relief, Plaintiffs respectfully request an indicative ruling stating:

**A. that this motion raises a substantial issue; and/or**

**B. that the Court would grant appropriate Rule 60(b) relief if the Seventh Circuit remands for that purpose.**

69. Plaintiffs will then notify the Seventh Circuit and seek appropriate relief under Federal Rule of Appellate Procedure 12.1.

---

**12. REQUESTED EMERGENCY RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

**A.** Grant this Emergency Motion;

**B.** Determine that the motion warrants immediate consideration because of the approaching November 3, 2026 General Election;

**C.** Enter an injunction pursuant to Rule 62(d), to the extent the Court determines it legally authorized and warranted on the present record, directing the appropriate Illinois election officials to place **Patricia L. Tillman and Joseph L. Mosely** on the November 3, 2026 General Election ballot as candidates for Governor and Lieutenant Governor;

**D. Alternatively**, immediately prohibit Defendants from taking actions that would render effective ballot relief impossible while the Court and Seventh Circuit resolve Plaintiffs' claims, and direct the appropriate election officials to preserve whatever administrative ability remains to implement ballot relief;

**E.** Grant appropriate relief under Rule 60(b)(1);

**F.** Alternatively, if the pending appeal prevents the Court from granting the requested Rule 60(b) relief, enter an indicative ruling under Rule 62.1 stating that the motion raises a substantial issue and/or that the Court would grant appropriate relief upon remand;

**G.** Order an expedited response from Defendants, if the Court determines a response necessary;

**H.** Set an immediate hearing if necessary;

**I.** Enter the accompanying standalone Proposed Emergency Injunction; and

**J.** Grant such other relief as the Court determines just and proper.

Respectfully submitted,

**PATRICIA L. TILLMAN**

Plaintiff, Pro Se

Signature: Patricia L. Tillman 09-28-2026

Address: 229 E. 51st

City/State/ZIP: Chicago IL. 60615

Telephone: 312-316-1305

Email: patriciatillman@rocketmail.com

Date: September 28, 2026

**13. DECLARATION OF PATRICIA L. TILLMAN**

I, **Patricia L. Tillman**, declare as follows:

I am a Plaintiff in this action and make this declaration from my personal knowledge. Plaintiff contends that competing candidates, both Democrats, Republicans, General Counsel Marni Malowitz, Hearing officers David Herman, Illinois state Board of Elections Board members et,al and opposing Attorney, participants were all afforded meaningful access to the petition Objection governmental election procedure machine, while Plaintiff's was the only ones unable to participate in that same exact machinery on materially equal terms. They continued to file objections, object, rule on, litigate, prevail, advance, in a machine controlled by the Illinois state board of elections, how is it that the same machine that worked for every other candidate only failed to work for the only Democratic, African American, opponent to the incumbent JB Pritzker., and the only woman in the entire Illinois Gubernatorial race. It was not an error it was intentional. And it was not restored until after the objection process had expired.

1. I was a candidate seeking the Democratic nomination for Governor of Illinois during the 2026 election cycle.
2. During the election-objection proceedings, I attempted to participate in the Illinois State Board of Elections' Petition and Objection Portal.
3. I was unable to obtain meaningful portal access during a material portion of the objection period.
4. I repeatedly raised the access problem with election officials.
5. I subsequently received an ISBE communication acknowledging a coding problem affecting my ability to upload documents and describing a temporary workaround.
6. By the time I obtained access, I contend that material opportunities to participate in the objection process had already expired.
7. I raised these constitutional issues before this Court.
8. I appealed the January 16, 2026 disposition to the Seventh Circuit.

9. To the best of my knowledge, Appeal No. 26-1108 remains pending and no final appellate judgment or mandate has issued.
10. I seek emergency relief because the Illinois General Election will occur November 3, 2026, and I believe further delay threatens to eliminate any possibility of effective ballot relief.
11. I respectfully request immediate judicial consideration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 28, 2026, in Chicago, Illinois.

---

**Patricia L. Tillman**

---

**14. CERTIFICATE OF SERVICE**

I, Patricia L. Tillman, certify that on September 28, 2026, I served a true and correct copy of the foregoing **Plaintiffs' Emergency Motion for Injunction Pending Appeal Pursuant to Fed. R. Civ. P. 62(d), for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(b), and, to the Extent Necessary, for an Indicative Ruling Pursuant to Fed. R. Civ. P. 62.1**, together with all accompanying exhibits and proposed order, upon all counsel of record entitled to service.

Method of Service: _email and certified mail______________________________

Counsel Served: **ILLINOIS STATE BOARD OF ELECTIONS, et al.,** ISBE Board Members, Laura K Donahue, Rick S. Terven Sr., Jennifer M. Ballard Croft, Tonya L. Genovese, Catherine S. McCrory, Jack Vrett, Legal Counsel II and Ehics Illinois State Board of Elections, Sean Sarcu, David Herman, K Michael Tecson, Kevin M Morphew, Attorney General Kwame Raoul, Lee B Stark, Wallace Gator Bradley, Chistina D. Cray and Casandra B. Watson

Address/Email: Illinois State Board of elections et, al

General Counsel: Marni Malowitz

Email:GeneralCounsel@elections.il.gov

69 w. Washington Chicago IL. 60602

Attorney: Kevin M. Morphew of Sorling Northrup

121 W. Wacker Dr. Suite 1108

Chicago IL 60601

Email: kmmorphew@sorlinglaw.com

Hearing Officer: Giffin, Winning, Cohen & Bodewes Attorney: David Herman

900 Community Drive Springfield IL. 62703 David Herman

Email: dherman@wcblaw.com

Attorney General: Kwame Raoul and Lee B. Stark

115 s. LaSalle St.

Chicago IL. 60603

Email: lee.stark@iag.gov

---

**Patricia L. Tillman, Pro Se**

229 e. 51st

Chicago IL. 60615 Patricia L. Tillman 09-28-2026

**EXHIBIT INDEX**

**Exhibit A** — Certified Transcript of January 13, 2026 Hearing

**Exhibit** B— Certified Transcript of January 16, 2026 Hearing

**Exhibit C**— November 21, 2025 ISBE communication concerning portal/coding error

**Exhibit D** — December 9, 2025 State Officers Electoral Board decision

**Exhibit E** — January 16, 2026 District Court Order/Judgment

**Exhibit F** — Notice of Appeal / Seventh Circuit documentation showing Appeal No. 26-1108

Exhibit G --- Rules of Procedure 3. Appearance

Plaintiffs respectfully request expedited consideration because the requested relief concerns the approaching **November 3, 2026 General Election** and Plaintiffs contend that further delay threatens to make effective prospective election relief unavailable.

# RELIEF PRESENTED TO THE COURT

Plaintiffs give notice that they request the following relief:

**1. Primary Emergency Relief — Ballot Placement.**
An emergency injunction directing the Illinois State Board of Elections and other appropriate election officials, to the extent authorized by law and within the Court's jurisdiction, to take all necessary and practicable steps to place **Patricia L. Tillman as a candidate for Governor of Illinois and Joseph L. Mosely as a candidate for Lieutenant Governor of Illinois on the November 3, 2026 General Election ballot**.

**2. Alternative Emergency Relief — Preservation of Effective Relief.**
If immediate ballot placement is not granted, an emergency injunction preserving Plaintiffs' ability to obtain effective ballot relief while the constitutional claims and pending appellate proceedings are adjudicated, together with expedited disclosure concerning the present status of ballot preparation and the practical steps remaining for implementation of any ballot-placement order.

**3. Rule 60(b)(1) Relief.**
Relief from the January 16, 2026 judgment to the extent the judgment resulted from an alleged judicial mistake of law or fact concerning the constitutional claims and issues actually presented.

**4. Party-Presentation and Due-Process Issues.**
Consideration of Plaintiffs' contention that, although the Court could consider relevant state-election proceedings as factual or legal background where appropriate, state-law signature matters should not have been substituted for the federal constitutional controversy Plaintiffs contend was actually presented for adjudication.

**5. Rule 62.1 Alternative Relief.**
If the pending appeal prevents the District Court from granting the requested Rule 60(b)(1) relief, an indicative ruling stating that the motion raises a substantial issue and/or that the Court would grant appropriate relief if the Seventh Circuit remands for that purpose.

**6. Expedited Consideration.**
An expedited ruling and, if the Court determines a hearing is necessary, an emergency hearing at the earliest time available to the Court.

•

Respectfully submitted,

Patricia L. Tillman
09-28-2026

# RULES OF PROCEDURE

## ADOPTED BY THE STATE BOARD OF ELECTIONS SITTING AS THE DULY CONSTITUTED STATE OFFICERS ELECTORAL BOARD FOR THE HEARING AND PASSING UPON OBJECTIONS TO NOMINATING PAPERS SEEKING TO PLACE ESTABLISHED POLITICAL PARTY CANDIDATES ON THE BALLOT FOR THE MARCH 20, 2012 PRIMARY ELECTION

Pursuant to Section 10-10 of the *Election Code* (10 ILCS 5/10-10), the State Board of Elections, acting in its capacity as the State Officers Electoral Board (the "Board"), a duly constituted electoral board under Section 10-9 of the *Election Code*, hereby adopts the following rules of procedure:

### 1. EXPEDITED PROCEEDINGS

On all hearing dates set by the Board or its designated hearing examiner, (other than the Initial Hearing of the Board) the objector and the candidate (at times individually referred to as "party" or collectively referred to as the "parties") shall be prepared to proceed with the hearing of their case. Due to statutory time constraints, the Board must proceed as expeditiously as possible to resolve the objections. Therefore, there will be no continuances or resetting of the initial hearing or future hearings except for good cause shown. The parties shall make themselves reasonably available by telephone (including cellular phone) during the day and at least until 7:00 P.M (or as otherwise directed by the Board or hearing examiner) for receipt of notice from the Board, from the hearing examiner, or from opposing parties during the course of these proceedings. If the Board or hearing examiner has made reasonable attempts to contact a party by telephone, cellular phone, fax or by e-mail at the number(s) or address(s) provided by that party and the party cannot be contacted or fails to respond to such contacts, the party will be deemed to have received constructive notice of the proceedings and the proceedings may go forward without the presence of that party. If a party has received actual or constructive notice of a hearing and fails to appear, the failure to appear shall constitute acquiescence by such party as to any action taken at that hearing or any agreement made by and between the parties present at the hearing.

### 2. CASE MANAGEMENT CONFERENCE (Initial Hearing)

The Board will notify the parties to appear at a specified time and place for a conference with the General Counsel of the State Board of Elections, his designee or the Board's appointed hearing examiner for the purpose of considering issues such as scheduling, attendance of witnesses, filing of briefs and motions, discovery matters and any other proceedings intended to aid in the expeditious resolution of the objection. This is usually done at the same time as the initial hearing before the State Officers Electoral Board. Additional case management conferences may be called by the



Exhibit G 1-2

Board, the General Counsel or the appointed Hearing Examiner when necessary. If an objector fails to appear at the initial hearing after having been sent due notice, the Board may dismiss the objection for want of prosecution. If a candidate fails to appear at the initial hearing, he/she will be bound by any decisions made by the Board, the General Counsel or the designated hearing examiner.

## 3. APPEARANCE

The candidate or objector may appear in person on his or her own behalf and participate in any proceeding before the Board or may appear by an attorney licensed to practice law in the State of Illinois. Non-attorneys other than a party appearing pro se shall not appear or participate (including the offering of any argument or advocating a position to the Board, any counsel to the Board or the Board's appointed Hearing examiner) in the Board's hearings on behalf of either the candidate or the objector, except that non-attorneys may participate as observers or coordinators at any records examination on behalf of any party. Out of state attorneys may appear subject to Part 125.60(b) of the Rules and Regulations of the State Board of Elections. A party must file with the Board and other parties of the case a written appearance stating his or her name, address, telephone or cellular phone number, and, if available, a fax number and e-mail address as well as the name and contact information of his or her attorney, where appropriate.

Though every effort will be made by the Board or its designated Hearing Examiner to keep parties informed of upcoming events, parties shall be responsible for periodically checking the Board's website, with the Board's staff or the Board's hearing examiner to keep apprised of scheduled events in their case. The failure of a party to receive actual notice of an event posted on the Board's website regarding their case shall not prevent such event from proceeding as scheduled nor shall it invalidate any action taken at such event.

## 4. AUTHORITY OF THE BOARD

The Board itself or through its duly appointed hearing examiner if applicable; (See Part 5 below) shall conduct all hearings and take all necessary action to avoid delay, to maintain order, to ensure compliance with all notice requirements, and to ensure the development of a clear and complete record. If a Hearing Examiner has been duly appointed, the Hearing Examiner shall preside over all such hearings. At the discretion of the Board or the hearing examiner, hearings may be conducted in two or more locations connected by telephonic or video conference; however, any witness who is going to provide verbal testimony must appear at the same location as the requesting party or its counsel (unless otherwise agreed by such requesting party or their counsel, and the hearing examiner or Board). The Board or its designated hearing examiner shall have all powers necessary to conduct a fair and impartial hearing including, but not limited to:

(a) Administer oaths and affirmations;



G 2

Glennetta Bell
12611 State St.
Chicago, IL 60628

December 17, 2025

To whom it may Concern

my name is Glennetta. On 9-3-25 I was campaining with my dear Friend Patricia L. Tillman at Vision Odeum and Events. Located at 11901 S. Loomis St. Chicago IL 60643 We were Standing in side door of the enterance area. Circulating nominations petitions for Patricia L Tillman. When Gator Bradley walked up and aggresively stated w/ J. B. Pitzker petitions in his hand. "Don't sign that petition. Fuck that Bitch. We're signing J.B's petitions, We're getting him on the Ballot. He continued to do this thru out the night w/ multiple Voters. Stopping them from signing Patricia L. Tillmans petitions

Sincerely,

Glennetta Bell

Patricia L. Tillman

RENEE TUCKER MACKLIN
OFFICIAL SEAL
Notary Public - State of Illinois
Commission No. 983423
My Commission Expires December 18, 2027

Renee Tucker Macklin
12/19/2025

EX. F

**INFORMATION NOTICE/ CHICAGO POLICE DEPARTMENT** THIS IS NOT AN OFFICIAL POLICE REPORT - IT IS FOR INFORMATION PURPOSES ONLY. R.D. No. JJ 45773

AT ASSAULT / Simple IUCR CODE 0560 DATE/TIME OF OCCURRENCE 27 Sep 25

NAME OF VICTIM/COMPLAINANT ______ BEAT/UNIT OF ASSIGN. 2202 BEAT OF OCCUR. 524

CASE NAME - PEOPLE OF THE STATE OF ILLINOIS/CITY OF CHICAGO vs. ______

If an arrest has taken place, the following is your court information: Date: ______ Time: ______ Court Branch: ______ Court Loc.: ______

If you need more help call the Cook County State's Attorney's Office Victim Witness Assistance Unit at (773) 674 - 7200.

Your case will be on file with the Chicago Police Department under the above listed R.D. Number. Refer to this number whenever you are communicating with the Chicago Police Department concerning this incident. Your case will be assigned for follow-up investigation based upon specific facts obtained during the initial investigation. The presence of these facts can predict whether a comprehensive follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property. Your case will reviewed and retained to determine if criminals active in the area can be identified. *A detective will not routinely contact you unless additional information is required or your further assistance is needed.*

## TO REPORT ADDITIONAL INFORMATION

If you have knowledge of specific facts which might assist in the investigation of your case, please contact the unit marked below:

| | PROPERTY CRIMES | VIOLENT CRIMES | SPECIAL VICTIMS | |
|---|---|---|---|---|
| AREA 1 | ☐ (312) 747-8384 | ☐ (312) 747-8380 | ☐ (312) 747-8386 | ☐ BOMB UNIT (312) 746-7622 |
| AREA 2 | ☐ (312) 747-8273 | ☒ (312) 747-8271 | ☐ (312) 747-8276 | ☐ ARSON SECTION (312) 746-7618 |
| AREA 3 | ☐ (312) 744-8263 | ☐ (312) 744-8261 | ☐ (312) 744-8266 | ☐ FINANCIAL CRIMES UNIT (312) 746-9661 |
| AREA 4 | ☐ (312) 746-8253 | ☐ (312) 746-8251 | ☐ (312) 746-8255 | |
| AREA 5 | ☐ (312) 746-7394 | ☐ (312) 746-6554 | ☐ (312) 746-6554 | |

## MISSING PERSONS

☐ If the missing person is under 18 years of age, contact the National Center of Missing and Exploited Children 1-800-THE-LOST, www.missingkids.com, National Runaway Safeline: 1-800-RUN-AWAY, www.1800runaway.org.

☐ If the missing person is over 18 years of age, contact the Illinois State Police Clearinghouse for Missing Persons : 1-800-U-HELP-ME, www.isp.illinois.gov/UnsolvedCrime/MissingPersonsAll.

☐ When persons reported missing are located or have returned contact: (312) 745 - 6019 or (312) 745 -5020.

## COPY OF THE REPORT

The above listed R.D. Number may suffice for insurance purposes. However, there may be instances when a copy of the case report is desired. A copy of the case report which verifies that an incident of injury, loss or damage has been reported to the Chicago Police Department may be obtained. To obtain a copy of the report, you can send a check or money order payable to the *"DEPARTMENT OF REVENUE-CITY OF CHICAGO"* in the amount of $.60 and a self-addressed stamped return envelope to: Chicago Police Department, Records Division, Customer Service Section, 1st floor, 3510 South Michigan Avenue, Chicago, Illinois 60653. Include the following information with your request: 1) Victim's name and address (or person reporting crime), 2) Type of incident, 3) Address of occurrence, and 4) R. D. Number. You can also visit in person or call (312) 745-5130 between 8:00 a.m. - 3:00 p.m., Monday - Friday (excluding public holidays).

## GET INVOLVED - COMMUNITY POLICING

The police alone cannot solve the problems of crime in our City. It takes an active and informed community working with the police and other City agencies to really make a difference. Join your neighbors and your neighborhood police officers as we work together to improve the quality of life and reduce crime in our City. To find out which beat you live on or how to become involved, call 311 or visit online at: http://www.home.chicagopolice.org

Beat No. ______ Next Beat Community Meeting (date/time) ______

at (location) ______

To report a crime in progress or other emergency that requires immediate police response, call 911.
To report non-emergency situations, call the Police Department at 311 within City limits, or if outside the City limits call (312) 746-6000.
To compliment an officer send an email to ComplimentCPD@chicagopolice.org.

## TELECOMMUNICATIONS DEVICE FOR THE DEAF/TELETYPE (TDD/TTY)

To report a police emergency, hearing-impaired persons should dial 9-1-1. For non-emergency situations, hearing-impaired persons may communicate with the Chicago Police Department 24 hours a day by calling 3-1-1.

## OBTAINING A WARRANT OR SUMMONS FOR CRIMINAL CHARGES

If an arrest is made, you will be informed of the date, time, and location of the court proceedings at which your appearance will be required. When you report a crime and an arrest is not made, you may go in person to the appropriate court listed below to request that criminal proceedings be initiated by way of a warrant or summons. Bring this Victim Information Notice and any other relevant information, such as the offender's name, physical description, and home address to the warrant officer assigned to the court between 8:30 am and 11:30 am Monday through Friday (excluding court holidays). The warrant officer will then assist you in the process of obtaining the warrant or summons.*

| Police District of Occurrence | Court Branch for Warrant or Summons | |
|---|---|---|
| ☐ 14,16,17,25 | Branch 23 | 5555 W. Grand Ave. |
| ☐ 15, 19, 20, 24 | Branch 29 | 5555 W. Grand Ave. |
| ☐ 2, 3, 4, 5, 6, 7, 8, 9, 22 | Branch 35 | 727 E. 111th St. |
| ☐ 1,10,11,12,16 | Branch 43 | 3150 W. Flournoy St. |

*For incidents relating to domestic violence, a warrant/summons will only be issued from the Domestic Violence Court located at 555 West Harrison Street, on the first floor.

## AUTOMATED VICTIM NOTIFICATION (AVN)

**The County of Cook has a toll free, multilingual, 24-hour Automated Victim Notification System. To obtain information about a defendant's court date or custody inside of Cook County Jail: call 1-877-848-3445. *Do not depend only on the AVN for your safety. If you feel that you may be in danger, take precautions as if the defendant has already been released.***

## ILLINOIS CRIME VICTIMS NOTIFICATION

Innocent victims of violent crime may be eligible to receive benefits from the Illinois Crime Victims Compensation program for such costs as medical, funeral, loss of support, and wage loss. *NO RECOVERY IS PROVIDED FOR PROPERTY LOSS OR DAMAGE, NOR FOR PAIN OR SUFFERING.* To apply or to determine whether one qualifies, the victim, or if deceased, a relative or dependent, must contact the Illinois Attorney General's Office. Further information and claim forms can be obtained from the Crime Victims Compensation Program, Office of the Attorney General of Illinois, 100 West Randolph Street, 13th Floor, Chicago, Illinois 60601, or by calling 1-800-228-3368, TTY: 1-877-398-1130 or email at crimevictimservices@atg.state.il.us.

## RECOVERY OF PROPERTY - STOLEN VEHICLE RECOVERED

The Chicago Police Department must be notified *IMMEDIATELY*, via the "911" emergency number, when property reported lost or stolen is recovered.

## CREDIT CARDS - CHECKS, LOST OR STOLEN

Immediately notify the concerned credit card issuer or bank by telephone to reduce the possibility of being liable for the unauthorized use of your lost or stolen credit card or check. It is suggested that you also inform the credit card issuer or bank in writing as a follow-up measure to ensure proper notification.



**IMPORTANT: RETAIN THIS NOTICE FOR YOUR PERSONAL RECORDS**

Exhibit E

# AFTER VISIT SUMMARY

OSF HealthCare

**Patricia Tillman** MRN: 10033841 CEID: OSF-LFFR-7TVN-JDHC 11/18/2025 LCMMC EMERGENCY 708-422-6200

## Instructions

You were evaluated in the emergency room today for wrist pain. Xrays did not reveal a fracture or dislocation of the joint although there may be a tendon or ligament injury.

You may take Ibuprofen 600 mg every 8 hours and Tylenol 650 mg every 4 hours for pain relief, take as directed and follow up with your primary care doctor. You may take Norco as needed for severe, breakthrough pain. You may wear your wrist brace as needed.

Rest and elevate the affected painful area. Apply cold compresses intermittently as needed. As pain recedes, begin normal activities slowly as tolerated. Return to the ER for worsening symptoms including but not limited to excessive pain, numbness, fevers, loss of sensation, paleness or coldness.

**The care provided today was on an emergency basis only so it is very important to follow-up with your provider in the time recommended. You may return to the emergency department at any time or for any reason.**

**Your medications have changed**

START taking:
HYDROcodone-acetaminophen (NORCO)

Review your updated medication list below.

**Pick up these medications at WALGREENS DRUG STORE #04306 - CHICAGO, IL - 1633 W 95TH ST AT 95TH & ASHLAND**

- HYDROcodone-acetaminophen
Your estimated payment per fill: $7

Address: 1633 W 95TH ST, CHICAGO IL 60643-1331
Phone: 773-445-9277

**Call MILE SQ HEALTH CTR IMM & PRIMARY CARE AUBURN GRESHAM today**

Why: This is a primary care doctor please follow-up for further evaluation
Specialty: Primary Care
Contact: 839 W 79th St
Chicago Illinois 60620-2501
312-996-2000

## Today's Visit

You were seen by Josiah Han, MD and Zoe Fomberg, PAC

**Reason for Visit**
Wrist Pain

**Diagnosis**
Wrist sprain

**Imaging Tests**
Right Wrist X-Ray

**Medications Given**
ketorolac (TORADOL) Last given at 7:07 PM

Blood Pressure 121/82

Temperature (Tympanic) 99 °F

Pulse 77

Respiration 18

Oxygen Saturation 98%



Exhibit C

SORLING NORTHRUP ATTORNEYS (https://www.sorlinglaw.com)

1 North Old State Capitol Plaza, Suite 200
Springfield, IL 62701 (https://goo.gl/maps/ovEwd5pXPWJ9syh8A)

217.544.1144(tel:2175441144)

# KEVIN M. MORPHEW

< ATTORNEYS
(https://www.sorlinglaw.com/attorneys/)



(mailto:kmmorphew@sorlinglaw.com)
KMMORPHEW@SORLINGLAW.COM

Kevin M. Morphew joined Sorling Northrup in 2012. Admitted to practice law in Illinois in 2011, Mr. Morphew concentrates his practice in the areas of lobbying and government affairs, election law, administrative procedure, and commercial litigation.

Mr. Morphew is a graduate of the University of Iowa (B.A., 2006) and The John Marshall Law School (J.D., 2011). Prior to law school, he spent three years with the Illinois House of Representatives as a research analyst for the Research and Appropriations Staff. While on staff, he advised legislative leaders and legislators from the House Democratic Caucus on policy issues and developed an extensive knowledge of the Illinois legislative and budget-making processes. His duties included analyzing the purpose, scope, and impact of legislation in the areas of transportation, agriculture, environmental regulation, and economic development. He also assisted with coordination of several campaigns for candidates elected to the Illinois General Assembly.

At Sorling Northup, Mr. Morphew joined the government affairs practice team that represents a wide range of highly regulated businesses, industries and professional associations before the Illinois General Assembly and Office of the Governor. Relying on his prior experience and relationships as a legislative staffer, Mr. Morphew serves as both an advocate and guide for his clients through the Illinois legislative process where he strives to create the best regulatory climate for their businesses to succeed. In addition to lobbying, Mr. Morphew has extensive experience in election law, where he advises candidates seeking office at all levels of government with ballot access issues. He regularly appears before municipal, county, and state boards of election to litigate issues related to ballot access and campaign finance disclosure.

Mr. Morphew is a member of the Illinois State, Sangamon County, and Chicago Bar Associations.

## Education

University of Iowa, Iowa City, IA - B.A. in Political Science, 2006

The John Marshall Law School, Chicago, IL - J.D., 2011

## Bar Admissions

Illinois

## Practice Areas

(https://www.sorlinglaw.com/administrati\
law/)

Administrative Law (https://www.sorlinglaw.com/administrative-law/)

(https://www.sorlinglaw.com/elections-political-campaign-law/)

Elections, Political & Campaign Law (https://www.sorlinglaw.com/elections-political-campaign-law/)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA L. TILLMAN and JOSEPH L. MOSELY, Candidates for Governor and Lieutenant Governor, Plaintiffs, | ) | Case No. 26 C 218 |
| v. | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, *et al.*, Defendants. | ) | Chicago, Illinois<br>January 13, 2026<br>10:03 a.m. |

TRANSCRIPT OF PROCEEDINGS - MOTION HEARING
BEFORE THE HONORABLE ELAINE E. BUCKLO

APPEARANCES:

Plaintiff, *pro se*: MS. PATRICIA TILLMAN
229 E. 51st Street
Chicago, Illinois 60615

Court Reporter: SANDRA M. TENNIS, CSR, RMR, FCRR
Official Court Reporter
219 S. Dearborn Street, Room 2260
Chicago, Illinois 60604
Telephone: (312) 554-8244
sandra_tennis@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

A-1-22

(Proceedings heard in open court:)

THE CLERK: Calling Case 26 CV 218, Tillman v. Illinois State Board of Elections, *et al*.

THE COURT: Yes?

MS. TILLMAN: Hello.

THE COURT: Please come up to the podium. Are you Ms. Tillman?

MS. TILLMAN: I am. Hi, your Honor.

THE COURT: Did you give notice of this hearing to anybody at the State Board of Elections?

MS. TILLMAN: Downstairs I filed a notice, and they said that they have to wait on you to give them permission to serve. I filed summons, and they said that --

THE COURT: When did you do that?

MS. TILLMAN: I did that yesterday. I wanted to do it when I filed this information, I mean, when I filed the complaint, but they told me that I needed to wait until -- to see whether you was going to approve the fee waiver or not.

THE COURT: Well, I did approve it.

MS. TILLMAN: And then I tried to file it again, and they said that they had to wait. I don't know why. I just did what I was instructed to do by them.

THE COURT: All right. Well, we --

MS. TILLMAN: And then I filed a summon --

THE COURT: -- need to prepare an order allowing --

telling them to do so.

Okay. I'm trying to make sure I understand the facts. After you were denied -- well, let me start with something else. Are you -- do you have any challenge to their substantive decision that you did not have 5,000 valid signatures?

MS. TILLMAN: I, um, submitted seven thousand --

THE COURT: I know.

MS. TILLMAN: -- two hundred fifty-three signatures, which people that was circulating my petition, they have an office in the building -- in the state election building where you can check signatures. So my signatures was checked. And I had 1,053 signatures above the minimum 5,000 to be qualified for the ballot. So I had 6,054 signatures that qualified me for the ballot.

When we had the objection hearing, I was never able to object to my opponent's petitions. They did not allow me to see his petitions. I could not get into the portal.

THE COURT: Well, you weren't able to initially. You got in on the --

MS. TILLMAN: After the window was over. After all the objections, and everything, was over with, they allowed me to get in.

THE COURT: What weren't you able to see?

MS. TILLMAN: I'm sorry?

THE COURT: What isn't you couldn't see?

MS. TILLMAN: So we get to object to each other's petitions.

THE COURT: Yeah, I know. There was an objector, and he challenged some of your signatures.

MS. TILLMAN: Right. So I didn't have the same opportunity to do my opponent's.

THE COURT: Well, but that's really sort of irrelevant to whether -- was your opponent -- he -- he wanted to be on the ballot, too?

MS. TILLMAN: Yes. Governor Pritzker -- I'm running against Governor Pritzker.

THE COURT: Well, you have to have believed that Governor Pritzker has sufficient signatures.

MS. TILLMAN: Well, whether he do or don't, I still have that due process to be able to participate in the election process.

THE COURT: Well, that doesn't answer my question, whether you are challenging the objections that were sustained to your own signatures.

MS. TILLMAN: Yes, I would have -- I wanted to object to that, but they did not open the portal so that I can submit my objection. I was not allowed to submit an objection. I was not allowed to participate.

THE COURT: Okay. Well, they made a -- they obviously

made a mistake. But at some point you were able to get into the portal.

MS. TILLMAN: That wasn't a mistake, that was -- because throughout the process, I continuously told them that I cannot access the portal. They continuously told me that I was incompetent.

THE COURT: Well, what they meant was, I assume, was probably that -- incompetent in that you didn't have legal authority, or something. You had to have an attorney. And they decided that was wrong, and so they listed you as the attorney so you could get it -- this is in your papers -- so that you could get access as of November 21.

MS. TILLMAN: But the objection window was closed at that point.

THE COURT: When you say "the objection window was closed" --

MS. TILLMAN: Closed.

THE COURT: -- what do you mean?

MS. TILLMAN: That I could not object to them -- I could not say I disagree with your objection to my petitions. I could not file any motion to disagree. There's a process, like, if they object to my petitions, I have the right to say I disagree with this, and then -- but I didn't have that opportunity. And then there was a hearing to view the records on the 24th. They didn't allow me access to the portal until

close of business Friday, the 21st. That following Monday, we were supposed to see the -- hear the records; right? But I was injured because I was attacked by the attorney in the hearing, in the hearing on the 18th. I was attacked because I kept telling him I cannot access the portal. Instead of them doing some research and seeing if I could actually access the portal, they thought I was being defiant, and they said that I was being disrespectful because I was asking for other ways to access it. I was saying, well, there's mailing option. Do you have any other options for me. No, we're not giving you any options. And I'm like, well, there has to be other ways for me to participate. So they thought that I was being disruptive just because I was asking --

THE COURT: This was occurring over in the Chicago office?

MS. TILLMAN: Yes, in the office the day of the objection hearing. And so the man grabbed my arm --

THE COURT: On the 18th, or it was on the 24th?

MS. TILLMAN: November the 18th. The man grabbed my arm and twist my arm.

THE COURT: Who is it that did that?

MS. TILLMAN: Kevin Morphew.

THE COURT: Who is the attorney for?

MS. TILLMAN: He was the objection attorney for Governor Pritzker. And he twist my arm, and when I yelled and

hollered --

THE COURT: How did he happen to do that?

MS. TILLMAN: I'm sorry?

THE COURT: How did that happen?

MS. TILLMAN: Because I kept telling them that I need a way to participate in the process. They kept telling me -- I kept telling them that I cannot -- I cannot access the objection portal. They kept telling me that I am incompetent. We cannot help that you don't know how to do this. That's why we do not let people proceed without an attorney. You need an attorney because you don't know how to do this. I understood clearly how to access the portal. It was blocked.

THE REPORTER: It was what, I'm sorry?

MS. TILLMAN: It was blocked. They did not allow me access. And then --

THE COURT: Well, they say they did -- they said that they figured out a temporary way to --

MS. TILLMAN: After -- after all of the proceedings was over with.

THE COURT: Okay.

MS. TILLMAN: So at that point, they tell me -- I asked for a continuance so that I can do the process. They said no continuances. No. You can't block me out of the process and then not give me an opportunity to participate.

THE COURT: Okay. So then they issued a decision on

December 7th or 8th. You had 10 days to file an objection in circuit court. Did you do that?

MS. TILLMAN: Yes, I did.

THE COURT: Well, what happened?

MS. TILLMAN: In circuit court, they cannot address the unconstitutional --

THE COURT: Yes, they can.

MS. TILLMAN: Well, I didn't know that. I thought that the federal court -- I thought that the federal court would be a better place because of the unconstitutional --

THE COURT: But you knew the statute said you had to do this within 10 days. And, I mean, it's a sensible kind of thing because, if you wait until the last minute, it's -- you can't change things.

MS. TILLMAN: I did not wait until the last minute, your Honor.

THE COURT: Well, you didn't file this until last Friday.

MS. TILLMAN: That's because I had it at the circuit court, and then the issues -- these unconstitutional issues I -- they fit for the federal courts. This is constitutional things. And they barred me because I was not an attorney. So in order for them to open up the portal to me, they had to place me in their portal as an attorney on November the 21st. So from November the 3rd until November the 21st, my

continuously telling them that I cannot access the portal, they did nothing about it until November the 21st, when all the proceedings was over with. And then when they did let me in, it wasn't on a *pro se*, it -- they had to enter me as an attorney. I'm not an attorney.

THE COURT: Well, but they just did that so you could get in.

MS. TILLMAN: Yeah, but it was over with.

THE COURT: Okay. So it was over with. So you had 10 days to file something in circuit court objecting to the whole thing, saying you -- that it -- among other things, I suppose, you could have said, you know, the objections to your signatures are wrong, that they're -- that the 400, or whatever more you needed at least, were good. And I guess you filed something, and then you dismissed it?

MS. TILLMAN: I dismissed it because the federal courts has jurisdiction over my case out of unconstitutional --

THE COURT: I don't think so, but. And then you didn't file anything -- since it had been December, you didn't file anything until -- for a month.

MS. TILLMAN: I'm sorry?

THE COURT: And then you didn't file anything in federal court for a month.

MS. TILLMAN: Your Honor, I had to research -- I'm not an attorney, so I had to research and find out what was legal

avenues for me. And according to the law --

THE COURT: Well, at this point it's all -- it's been certified.

MS. TILLMAN: It has not. They have not -- they have not certified the ballots. The ballots has not been printed. These are issues that the federal court can control.

THE COURT: And what is it you think that the federal court should do?

MS. TILLMAN: I just want to be placed on the ballot so that I can --

THE COURT: Well, they can't just -- I mean --

MS. TILLMAN: I want to be placed on the ballot so that I can have a chance to run this race.

THE COURT: Well --

MS. TILLMAN: Fairly. No one --

THE COURT: But why would it be fair -- how -- when is it you think this would all happen? I mean, I can't -- even if I had the authority, I can't just order these people who aren't even, at this point, before the Court. To place you on the ballot, someone would have to -- there would have to be review, they'd have to find out if they were correct. You'd have to -- as you say, you haven't even -- I guess you haven't even seen these signature challenges as of now?

MS. TILLMAN: I have not seen him. In this process --

THE COURT: No, no, you have -- have you seen the

challenges? Have you seen the signatures that were challenged? Have you seen their basis for challenging them?

MS. TILLMAN: Absolutely not.

THE COURT: Well, then, where would we start?

MS. TILLMAN: Because I was -- I was hurt. I was injured by the objector.

THE COURT: I understand that. Well --

MS. TILLMAN: Governor Pritzker's objector harmed me, so I was injured. I was under strong medication. I could not even go to the objection process.

THE COURT: Well, you went to the hospital that day with a strained wrist.

MS. TILLMAN: Yes.

THE COURT: And they gave -- told you to take Tylenol and ibuprofen and gave you something that I guess was probably --

MS. TILLMAN: Yeah, but then --

THE COURT: -- a little stronger.

MS. TILLMAN: -- they changed it to Norcos.

THE COURT: Okay. I'm not quite sure what Norco is, but did you need it?

MS. TILLMAN: I did because I was in pain.

THE COURT: How long?

MS. TILLMAN: I needed it for a couple of weeks.

THE COURT: Well, there is simply no way coming into

federal court at this time that any of this could get resolved.

MS. TILLMAN: And why is that?

THE COURT: Why?

MS. TILLMAN: Yes.

THE COURT: For the reasons I just told you. I can't just say that they were wrong. I don't know. I can't -- I can't give you -- I mean, maybe they were, but I can't just put you on the ballot.

MS. TILLMAN: So if they was constitutionally wrong --

THE COURT: Maybe and maybe not. I don't know.

MS. TILLMAN: But if -- if they -- I mean, if you read it, and according to the law, they are wrong. So if they are wrong, you're saying that you couldn't override that decision and place me on the ballot?

THE COURT: I can't override the decision without evidence --

MS. TILLMAN: I have evidence.

THE COURT: -- that they were wrong.

MS. TILLMAN: I have --

THE COURT: But you said you haven't even seen the evidence.

MS. TILLMAN: No, I have the evidence from the State Board of Election. Their legal department sent them an e-mail telling them that they blocked me from the process. There is a process where I'm supposed to be able to up --

THE COURT: But that doesn't mean your remedy is to be on the ballot.

MS. TILLMAN: That is the remedy.

THE COURT: Well, I can't do that.

MS. TILLMAN: Mmm. You can't or you won't?

THE COURT: I can't.

MS. TILLMAN: You can legally.

THE COURT: I cannot without evidence.

MS. TILLMAN: You have evidence. You have the letter --

THE COURT: I have the evidence --

MS. TILLMAN: -- from the -- from the legal department, from their legal department --

THE COURT: Saying that you would --

MS. TILLMAN: -- stating that I was barred from the electoral process.

THE COURT: And they fixed it. And --

MS. TILLMAN: But you cannot deny -- delay mean denying. You cannot fix something after the --

THE COURT: Then you should have --

MS. TILLMAN: -- process is over with. That's not fixing it. I had no opportunity to participate.

THE COURT: Then you should have come to court, either -- circuit court is where I think you should have come, or federal court, so that there was sufficient time to at least

delve into this proceedings. As it is, I will have -- authorize that they be served. And if it turns out that they have filed -- that they have committed a constitutional violation, then I assume there would be a remedy. But the remedy is not, at this point, to just put you on the ballot.

MS. TILLMAN: Okay. But if they have done things unconstitutionally within the law that states that the remedy is for me to be placed on the ballot.

THE COURT: Where does it say that the remedy is to place you on the ballot?

MS. TILLMAN: I don't have the law in front of me. As a matter of fact, could I get a copy of my complaint and motion that I filed? Because downstairs, when I filed it --

THE COURT: Mine is marked up.

MS. TILLMAN: When I filed it and I asked for a copy, they told me I wasn't allowed to get a copy, I have to get permission from you.

THE COURT: Oh, I guess that's because of the -- I can't give you mine because mine is all marked up. I think we could probably get --

What is Pat's phone number?

Okay. We'll get you one printed right now.

MS. TILLMAN: Thank you. So they denied an extension to the exam. They did not allow me to participate because I was not an attorney. You cannot bar somebody from the

participation, the electoral process, because they're not an attorney. Those are constitutional violation of my due process rights.

THE COURT: Okay.

MS. TILLMAN: And the only one that can satisfy that is the federal court. And that do mean automatic placement on the ballot.

THE COURT: Where does it say that there's automatic placement? There is a post-deprivation remedy, which could be damages, I suppose.

MS. TILLMAN: What damages would that be?

THE COURT: I don't know.

MS. TILLMAN: The damage to repair it is placing me on the order -- on the ballot. Why -- why wouldn't I be placed on the ballot if all of my due process was -- was violated?

THE COURT: Well, you had -- you had a remedy, which was to go to circuit court. The statute calls for that remedy. During that time, you could have said they didn't give me an extension and I never got a chance to look at this.

MS. TILLMAN: But I have an option of the state court and the federal court. So I felt that the federal court could better resolve my problem, my issues, my constitutional rights.

THE COURT: And --

MS. TILLMAN: So I brought it to the federal courts because of my constitutional rights.

THE COURT: Well, I don't think that the automatic -- at this point, I don't know. I'd like to hear from the other side as to whether the issues about the portal and whether you had an opportunity to file a meaningful objection. But I know that you did --

MS. TILLMAN: If -- if you read my motion.

THE COURT: I have read every piece --

MS. TILLMAN: And if you look at the evidence that I submitted with my motion, there's evidence here submitted with my motion. I have police records. I have doctor statements. I have --

THE COURT: I don't see --

MS. TILLMAN: -- e-mails from the legal department, from the Illinois State Board of Elections' legal department saying that I was --

THE COURT: That says that there was a mistake.

MS. TILLMAN: No. Mistake or not, I didn't get my due process.

THE COURT: Okay. But you had the opportunity --

MS. TILLMAN: And then in order to correct the --

THE COURT: -- for due process. Procedural due process was to file your objections in the state court.

MS. TILLMAN: Procedural due process give me the option to file in the federal court.

THE COURT: Where does it say that?

MS. TILLMAN: It says 42 USC 1983, under the Fourteenth Amendment and the First Amendment, it allows me to file in the federal court because my due process, my constitutional rights, has been violated, which allows me to file this in the federal courts.

THE COURT: Okay. But I don't know that your constitutional rights were violated. And you had a remedy in state court that you chose not to choose. And then you waited until essentially -- well, you waited over a month --

MS. TILLMAN: No, I did not.

THE COURT: -- after you got a decision. And if you thought -- in fact, longer than that, from the time -- if you're saying that it was necessarily violated on November -- whatever dates you couldn't get into the portal, then even earlier than waiting.

MS. TILLMAN: So I had to research. I'm not an attorney. So I had to research the law, study the law, in order to present this before the federal court. Because if I did not study the law, it would have never even gotten this far to even be heard in the federal courts. I'm not an attorney that has practiced for 30 years, so it took me some time to study this law to find out what was my options.

THE COURT: Okay. Well, as you say, you're not an attorney, but you --

MS. TILLMAN: So the time that I studied --

THE COURT: -- seem to be very sure that you're right.

All I can do at this point is I'm going to deny your motion for a temporary restraining order because I don't have -- there just isn't a basis for thinking that you will prevail. I will order that a summons be issued, and I will tentatively set this for January 23 at 10:30 and hope that the fed -- the Board of Elections is here at that time.

MS. TILLMAN: Hope that they're here.

THE COURT: Huh?

MS. TILLMAN: So --

THE COURT: Oh, by the way, there's something else. You were saying that the objector was Governor Pritzker? The objector was somebody else.

MS. TILLMAN: I said his attorney.

THE COURT: The objector's attorney.

MS. TILLMAN: The objector's attorney is Governor's Pritzker's attorney.

THE COURT: How do you know that?

MS. TILLMAN: Because he represent his campaign. He represent the governor and the lieutenant governor.

THE COURT: Well, for sure if -- if somebody did something there, you would most certainly would have an opportunity to at least file a state claim for assault.

MS. TILLMAN: I did file a police report.

THE COURT: A police report is not the same thing as a

lawsuit. But you could -- you've got two years to do that.

MS. TILLMAN: Okay. But you're saying -- you're sitting here before me telling me that you don't know, you're not sure.

THE COURT: I'm sure that --

MS. TILLMAN: I'm telling you that these are --

THE COURT: I cannot -- that I cannot put you on the ballot on the basis of what I have in front of me.

MS. TILLMAN: But the law states you can.

THE COURT: The law does not state that I can, and that's all there is to it. I will continue this until --

MS. TILLMAN: And then --

THE COURT: -- January --

MS. TILLMAN: -- at the point of January 23rd, the ballots will be already printed. So at that point, we would have went past.

THE COURT: Well, what would I do, order them right now? They don't even know about this hearing. Order them to put you on it?

MS. TILLMAN: No, but, I mean, can we get a sooner court date so that we can be in court before the ballot is printed?

THE COURT: Well, I'm happy to put them on -- put a sooner court date if I think that they can get notice of this. You could call them up --

MS. TILLMAN: I can.

THE COURT: -- and tell them.

MS. TILLMAN: I can. I can e-mail them as well.

THE COURT: Okay. I wish you would have done it before today.

MS. TILLMAN: I've done what you're -- what the --

THE COURT: There was certainly nothing keeping you from doing that.

MS. TILLMAN: I did what the clerks downstairs told me to do that said it was the correct way. And so I was following the procedures that they told me to follow.

THE COURT: Okay. When would you like me to set this?

MS. TILLMAN: I don't have a calendar. Let me see.

THE COURT: I can continue this until -- what's going on on the 21st? I really have to give them --

MS. TILLMAN: January 2026 calendar. So today is the 13th. Hmm. Is the 19th -- the 19th would be wonderful.

THE CLERK: The 19th is a federal holiday. The court's not open.

MS. TILLMAN: Oh, okay. Could we come back on the 16th? Friday? I mean, these are electoral --

THE COURT: Do you think they're going to have notice by then?

MS. TILLMAN: Well, this is an electoral process, and they do this expeditiously. So they do things overnight with

electoral processes.

THE COURT: What do we have on the 16th besides a pretrial conference? Oh, we have two sentencings.

THE CLERK: You have two sentencings and some statuses.

THE COURT: What time is the pretrial conference?

THE CLERK: Your pretrial conference is at 11:30, and you have two sentencings up at 10:30.

THE COURT: You could come in at 1:00 o'clock on the 16th.

THE CLERK: 1:00 o'clock on the 16th.

THE COURT: But they have to have gotten notice then to be here. Okay.

MS. TILLMAN: And what would you suppose I serve them? Is e-mail sufficient? Because that's the way we have been serving one another.

THE COURT: Well, ultimately they'll need -- but, yes, if you will give them some sort of notice so that somebody is here.

MS. TILLMAN: I will give them an e-mail notice.

THE COURT: Okay. We will see where we are then.

MS. TILLMAN: Thank you, your Honor.

THE COURT: Thank you.

THE CLERK: All rise.

(Proceedings concluded at 10:36 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Sandra M. Tennis* *April 14, 2026*

Sandra M. Tennis
Official Court Reporter

Date

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA L. TILLMAN and JOSEPH L. MOSELY, Candidates for Governor and Lieutenant Governor, Plaintiffs, v. ILLINOIS STATE BOARD OF ELECTIONS, *et al.*, Defendants. | Case No. 26 C 218 Chicago, Illinois January 16, 2026 10:03 a.m. |

TRANSCRIPT OF PROCEEDINGS - STATUS HEARING
BEFORE THE HONORABLE ELAINE E. BUCKLO

APPEARANCES:

Plaintiff, *pro se*: MS. PATRICIA TILLMAN
229 E. 51st Street
Chicago, Illinois 60615

Also Present: MR. MICHAEL DIERKES, Illinois Attorney General's Office.

Court Reporter: SANDRA M. TENNIS, CSR, RMR, FCRR
Official Court Reporter
219 S. Dearborn Street, Room 2260
Chicago, Illinois 60604
Telephone: (312) 554-8244
sandra_tennis@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

B 1-32

(Proceedings heard in open court:)

THE CLERK: Calling 26 CV 218, Tillman versus the Illinois State Board of Elections, *et al*, for status. Please be seated.

THE COURT: Thank you. Go ahead.

MR. DIERKES: Good morning, your Honor. My name is Michael Dierkes. I'm with the Illinois Attorney General's Office. I'm here on behalf of Attorney General Raoul and Assistant Attorney General Lee Stark. And I should add, these individuals haven't been properly served. And another attorney in my unit is going to handle the case if it does go forward. But we got notice from Ms. Tillman of this hearing today, and we wanted to have someone here.

THE COURT: Okay. Yes. Well, the other day I didn't think you had notice, and I thought --

MS. TILLMAN: Your Honor, I object to that. They got notice from me through e-mail, which you granted me --

THE COURT: Right. They have notice.

MS. TILLMAN: -- permission to notify them from -- through e-mail two days ago.

THE COURT: I just wanted to make sure that they did.

MS. TILLMAN: Yeah.

THE COURT: As it turns out --

MS. TILLMAN: I have records of that in my e-mail, that they did get served.

THE COURT: Well, yes, I mean, they're here, but --

MS. TILLMAN: Yes.

THE COURT: -- I don't think it's going to change anything. What I said the other day is that, in terms of due process, you had an opportunity -- you know, what they had to do was to provide you with process. I'm not sure if I stated it well enough the other day, but they have to provide you with a process. And as I said, the statute provided you with the ability to challenge their ruling, and you didn't take advantage of it. So that's going to really take care of the due process. And as I said, I could not, as a form of relief anyway, just put you on the ballot. It just --

MS. TILLMAN: Can I -- can I ask one thing?

THE COURT: Yes, of course.

MS. TILLMAN: Please?

Court Reporter, you sent me an e-mail the other day, and I think, if I'm correct, it could be sent directly, like now, directly to me. Is that true?

THE REPORTER: After you pay for the transcript, yes, I can e-mail you the transcript.

MS. TILLMAN: Today.

THE REPORTER: If you order it. If you order it and you pay for it, yes, I can e-mail it to you.

MS. TILLMAN: Today.

THE COURT: What -- what is it that you want to --

MS. TILLMAN: I want the -- I think it was said that I can get the audio of this hearing today. And that's what I was asking.

THE REPORTER: (Nodding.)

MS. TILLMAN: Okay. So last time that I --

THE COURT: Well, we'll issue a formal order.

MS. TILLMAN: You'll issue an order. And can I get a fee waiver for transcripts, please?

THE REPORTER: There's no fee waiver for transcripts.

MS. TILLMAN: It is if the judge say so.

THE COURT: What would be the purpose of that if I issue an order?

MS. TILLMAN: For appellate reasons.

THE COURT: I don't think that you would need it. I think you would just --

MS. TILLMAN: I do need --

THE COURT: -- go by the order.

MS. TILLMAN: I need transcripts for -- to appeal. I need the transcripts.

THE COURT: No, you don't.

MS. TILLMAN: Okay. So, your Honor, the last time that I was here, what you said was my due process does not matter because the state said I don't have enough signatures. And then you, quote, said, we all know that Governor Pritzker has enough signatures. I don't know that.

THE COURT: I don't know that. I have no idea.

MS. TILLMAN: But that's what you said.

THE COURT: But I'm saying whether he had enough signatures wasn't the issue.

MS. TILLMAN: The issue is that my due process rights has been violated.

THE COURT: Okay.

MS. TILLMAN: I did not --

THE COURT: That's what I'm trying to understand, which is why I had you in the other day and back today, to make sure that I understand what it is you're saying.

What I said the other day was, or certainly intended to say, is that it's a distraction to worry about Governor Pritzker because it is -- a challenge to his signature isn't before me. It was you -- the issue is whether you can be on the ballot. And what they said, according to you, and --

MS. TILLMAN: Not according to me, you brought that conversation. I kept telling you that I'm here for due process violations. You kept bringing up state matters, which has nothing to do with the pleadings that are before you. You ruled on state issues. You did not even take a -- into consideration --

THE COURT: I --

MS. TILLMAN: You did not take into consideration the pleadings that are set before you right now.

THE COURT: I certainly hope that I have.

MS. TILLMAN: No, ma'am, you have not.

THE COURT: Well, I haven't issued an opinion yet.

MS. TILLMAN: Okay. So if we could stick to the pleadings as before you and not the state -- you even told me that I don't belong in this court, that I need to take it back to the state. I have jurisdiction to be here. One, if I didn't, I would have never made it to your courtroom because they would have dismissed it from the very beginning.

THE COURT: Well --

MS. TILLMAN: Two, I have --

THE COURT: -- no, that's not -- it's me that would have to dismiss it.

MS. TILLMAN: Right. Two, I have jurisdiction to be here because my due process has been violated under the Fourteenth Amendment and the First Amendment under Rule 42 USC 1983.

THE COURT: 1983 is a vehicle.

MS. TILLMAN: 1983 is a civil rights.

THE COURT: It is a civil rights vehicle that you can use if there is a violation of your rights by a state actor, whether it is a due process right or an equal protection right or a First Amendment right. So, that is correct.

MS. TILLMAN: So under the equal protection right, I was not treated the same as other candidates going through this

electoral process. Other candidates had access to the portal, which I did not. I was totally locked out from the beginning to the end. The window opened for me after the objection process was closed. I did not have an opportunity to object to anything. Nothing. I have the e-mail from the legal department. I have the e-mail from their legal counsel and ethic officers, and it says:

Hi, Dave, and all parties. I am sending this along to note that Candidate Tillman's inability to file documents through the petition and objection portal has been solved as of 4:05 p.m.

So that was November the 21st --

THE COURT: Correct.

MS. TILLMAN: -- at 4:05 p.m.

It goes on to say: I can confirm that up until this point she was unable to upload documents to the portal due to a coding error in our system that we have encountered in other cases. You may notice that Candidate Tillman is now listed as an attorney representing herself. In this case, that is the short-term fix we have discovered that solves this issue until the larger coding problem is solved. As a result, Candidate Tillman is able to file documents as of 4:05 p.m. today. It is true that the portal would not allow her prior to this point.

November the 21st at 4:05 p.m. was a Friday, close-of-business. The window for objecting to anything was

exhausted.

THE COURT: What did you want to file as an objection?

MS. TILLMAN: I wanted to file an objection to his petitions.

THE COURT: To?

MS. TILLMAN: To the petitions. I wanted to see his petitions. I wanted to participate in the process. I had no opportunity to participate.

THE COURT: Let me make sure I -- if I understand you. The objections that you wanted to file were to somebody else's candidacy petitions?

MS. TILLMAN: See, in the election process, they object to mine, I can object to theirs. The whole system is candidates objecting to each other petitions, whatever way it may be.

THE COURT: Okay.

MS. TILLMAN: But you have to have access to the petition, to the objection portal, to see what it is that you want to do. No one knows what they want to do until they actually have access to the portal. Once you have access to the portal, then you can go in and look and determine what it is that you want to do. I could not even look at the portal until after the process was over.

THE COURT: Okay. When you were able to look at the portal, did you see anything that you wanted to object to?

MS. TILLMAN: Yes.

THE COURT: What?

MS. TILLMAN: I think those are state issues, and I want to stick to my due process issues. Those are state issues. I'm here for my due process.

THE COURT: Well, if there wasn't anything when you did see it that you objected to, then I don't suppose you were harmed by it.

MS. TILLMAN: Ma'am, I was harmed because I did not have access to the portal to participate. If my opponent had access to the portal, I should have had equal access to the portal to participate.

THE COURT: I'm very sorry that you didn't have access to the portal. And if there's a problem there, they certainly should get it fixed.

MS. TILLMAN: So that was denial. I was denied my due process.

THE COURT: All right. I think I understand your -- what you're saying. All right. We will take that into consideration. Anything else?

MS. TILLMAN: So here it -- my introduction was: This action seeks declaratory and injunctive -- injunctive relief and damages under 42 USC 1983 for ongoing violations of the First and Fourteenth Amendment arising from defendants' exclusion of plaintiff from the election objection process.

Denial of reasonable continuances based -- biased treatment and deliberate interference to plaintiff's safety following an assault during an official board hearing, conduct that continues to impair plaintiff's ballot access for the March 17, 2026, Illinois primary election.

And then I asked for a temporary restraining order because my name was on the ballot. And so they would take it off and put it on, take it off and put it on because they said that I was incompetent. This is what they used. They said that I was incompetent and the reason I could not access the portal because I was incompetent and I did not know what I was doing.

And then the state -- the legal counsel after, say, 20 days later, after I'm continuously complaining throughout the process, from November the 3rd until November the 21st, I continuously asked for access so that I can participate in the process. I was told that I'm incompetent. We cannot help that you don't know what you're doing. That's why people that don't have a lawyer does not belong here. If you had a lawyer, then they would be able to access the portal. I'm not required to have a lawyer. By law, it is my right to defend myself *pro se*.

THE COURT: I certainly agree.

MS. TILLMAN: But they said that I was incompetent, and that's the only reason I could not access the portal.

Twenty days later, with my consistency of trying to

find other remedies for me to participate, the legal counsel and ethic officer finally did some research and said Ms. Tillman has been telling you all the truth the whole time when you all was considering her incompetent, she -- when she was blocked.

THE COURT: That's why I asked you what -- I certainly agree that that would have been offensive and that you should have been able to have access. I don't know how those things work. I probably would have had trouble getting access myself.

MS. TILLMAN: But I didn't have trouble getting access. I was blocked.

THE COURT: Okay. And that was why I asked you, when you finally did get access, what it is --

MS. TILLMAN: I did -- when I finally got access, I asked them could I have a continuance, could they give me time to actually respond to their objections. It was denied. So once they opened up the window for me to participate, they denied me any participation, telling me that the window is closed. The window is closed, so you cannot object to anything at this time. So you cannot block me and then tell me that I can't participate after it's over. You're punishing me for your error. They're punishing me for their error.

And my name is not off the ballot, I'm asking that it stay on the ballot. See, because they -- they need to cease in what they're doing. They go back and forth so it will look

like I'm incompetent. One minute they doing something when my name was off the ballot. Then when I file -- I filed a motion to have it put back on the ballot, then they put it back on the ballot. And then now I'm here saying, can you keep me on the ballot, but then they'll change it again and say, you're off the ballot. So that's confusing to the voters. I have thousands of signatures. That is confusing to the voters for them to continuously take me off, put me on, take me off, put me on.

THE COURT: Can you tell me what Ms. Tillman's status is?

MR. DIERKES: Your Honor, I haven't -- or my office hasn't really had a chance to talk with the Board about all this. My understanding just from looking at the paperwork before coming here this afternoon is that there was an objection filed to her papers --

THE COURT: Right.

MR. DIERKES: -- and that was sustained after a hearing before the Board. She had an opportunity to seek administrative review in the circuit court. She did that but then voluntarily dismissed it. So as far as I know, she's not on the ballot and not going to be on the ballot, and there's no flip-flopping on that. She went through the process and the objection was sustained.

MS. TILLMAN: Now do you hear what he said? I went

through the process. What process did I go through? I was blocked. What process did I go through? Every other candidate, senators, congressmens, Republican candidates for governor, Democratic candidate for governor, all went through the process. I was the only one blocked. I was the only one blocked. And I am the only Democratic opponent to Governor Pritzker. So everybody that's seeking to be on the ballot for the March 17, 2026, primary election all had the opportunity to participate in the objection process. I am the only candidate that was blocked.

THE COURT: Which is why I asked you --

MS. TILLMAN: And then he just said that I participated. When and how did I participate, sir?

MR. DIERKES: I've seen the paperwork. There was a hearing before the Illinois State Board of Elections and an opportunity to appeal.

MS. TILLMAN: How can I appeal it if I'm blocked? And it says right here from the legal department, it says: I am sending this along to note that Candidate Tillman inability to file documents through the petition and objection portal.

And let me mention, this is the only way to object or participate is through this objection portal. There's no other way.

THE COURT: Okay. And what I wanted to know is what you were not able to file that you wanted to file.

MS. TILLMAN: Ma'am, I don't know what I wanted to file because I couldn't see anything.

THE COURT: Well, you've seen things since then; right?

MS. TILLMAN: Since then, but it's no need for me to really try to scrutinize anything because it wouldn't matter. At this point, it does not matter what I see, what I want to object to because the window is closed. And when I looked at the petitions, there was many errors in his petitions.

THE COURT: In -- when you say "his."

MS. TILLMAN: In Governor Pritzker's petitions. When I did have the opportunity to look at the petitions, there was numerous errors that I could have objected to, had I had the opportunity.

THE COURT: Okay.

MS. TILLMAN: He had people that was not even registered voters from the State of Illinois. He had people from California, he had people from Texas circulating petitions, which is not a part of the process. His -- his -- his nomination papers would have been kicked out. And even though he is a standing governor, we all have to go through the process to get back on the ballot.

THE COURT: Right.

MS. TILLMAN: So had I been able to see that and object to that, he would be standing where I am right now

because his paperwork could have been kicked off the ballot for the errors that I did see. But I did not have the opportunity to even see it at the time to object to it. And when I did see it and realized that I would have objected to that, to get him placed off the ballot, I don't have the opportunity to do so because they say the window is closed.

MR. DIERKES: And, your Honor? I -- again, I don't really know the details here, so I'm hesitant to speak. Obviously I'm confused by what Ms. Tillman said --

MS. TILLMAN: How can you be confused? You're the attorney from --

THE REPORTER: I can't take both of you talking at the same time.

MR. DIERKES: I do believe I saw something, you know, when our Assistant Attorney General came in when Ms. Tillman had filed for administrative review, I believe one of the arguments was that that petition for administrative review was untimely, she didn't meet the statutory window. And I think I saw that she had attempted to file a petition for administrative review in the Circuit Court of Cook County through that portal. That may be what Ms. Tillman is trying to say. Obviously that would not be a --

MS. TILLMAN: And even when they opened the portal it was illusionary. It still did not properly work. So I would go in and try to find some -- file something, and this is what

would come up. Service error. Service error. So even when they said they opened it, I still had problems trying to upload things. So there was no access for me to participate.

THE COURT: Well, you were able to file a petition to review their finding on December 8th, I think it was, 7th or 8th, that you were not qualified to be on the ballot.

MS. TILLMAN: Ma'am, we're not talking about state issues, we're talking about my due process. It does not matter what they said about them signatures. Because I can't say the same thing about my opponent's signatures.

THE COURT: Okay.

MS. TILLMAN: So it doesn't matter what they say about my signatures because I don't have the opportunity to say the same thing about my opponent's signatures. So that's void.

THE COURT: Okay. I think that I have gotten as far as we're going to get today. We're getting repetitious. Okay.

MS. TILLMAN: Wait, can I finish?

THE COURT: Yes.

MS. TILLMAN: So by me being locked out of the petition objection portal during the objection window, it denied me notice and meaningful opportunity to be heard. It denied reasonable continuances, and it gave me an illusionary access. Then you have the Anderson-Burdick section, where it says, under *Anderson vs. Celebrezze*: Courts weigh the character and magnitude of the burden against the state's

interest. Here the burden is severe. The burden is severe. Plaintiff was wholly excluded from the objection process, portal lockout, denied continuances during an official hearing, and provided only illusionary access thereafter, foreclosing any meaningful opportunity to be heard. Severe burdens trigger strict scrutiny, which defendants, the State Board of Election, cannot meet because no compelling interest justifies candidate-specific exclusion without alternative or accommodations.

And after the multiple times that I asked for different accommodations, they refused. The accommodations gave me was, you're incompetent, and you don't belong here anyway.

Even under intermediate scrutiny, the challenged actions are not narrowly tailored and failed balancing because administrative convenience cannot outweigh constitutional rights and voter's choice.

Not only would you be closing me out, these -- I have thousands of voters' interests at stake here. We have over 7,000 voters' interests that are stakes, and their voice will be silenced because they will not have the opportunity to choose who they want to vote for. There's no other candidate on the ballot for the Democrats, so they will be forced to accept the one candidate that's there because me, the other candidate, has been blocked from participating. So that's

taking away the rights of the voters, the choice of the voters. The voters has been silenced. It's not about me, this is about the people that actually signed these petitions that wanted to have a voice when they go to the voting polls. When they go to the ballot on March 17, 2026, they want to be able to choose who they want to vote for.

And my name is on the ballot. I'm asking that it don't be taken off the ballot. When I filed the motion that I filed, they had taken my name off the ballot, so I filed the motion for my name to be placed back on the ballot. But since I filed this motion, again, the scenario has changed because they changed it at the whim whenever they want to change it, disregarding all laws and doing whatever it is that they want to do to protect the ballot to have only one candidate.

In the Republican ballot, they have at least seven people on the ballot so the people have a choice who they vote for on March 17, 2026. They have a choice of seven people that they can vote for.

On the Democrat side, what they're trying to do is take away the rights of the voters and give them only one person. That's not fair to the voters. We have millions of voters that want to have a choice in the Democratic process to choose whom they want to be their governor.

This is not a partisan election where only one, we don't have dictators and kings here, where there's only one

option. And the only one option is because the other candidate has been totally blocked. Rights denied. This is not something that I did that caused the injury. This is not something that I did to cause the harm. This is something that the State Board of Election has done.

Then it says: Severe burdens triggers strict scrutiny, which defendants cannot meet because no compelling interest justifies candidate-specific exclusion without notice, alternative, or accommodation. Even under intermediate scrutiny, the challenged actions are not narrowly tailored and failed balancing because administrative convenience cannot outweigh constitutional rights and voters' choice.

THE COURT: Can you tell me what you're quoting from?

MS. TILLMAN: Anderson-Burdick.

THE COURT: Oh, okay.

MS. TILLMAN: Anderson-Burdick. And if I can remember what I -- when I was researching law, in Westlaw and Nex -- Nex -- whatever that is, it stated that the federal courts cannot -- and I know you as a judge, you can do whatever you want to do, but it stated that the courts cannot rule without this consideration. They cannot overlook Anderson versus the Burdick.

Then: Constitutional rights outweigh administrative inconvenience. The public interest favors fair elections and voter's choice.

So, again, this is not about me, these are about the voter's choice. If you do not rule that my name stays on the ballot, you are silencing thousands, even millions, of voters. The Republican side has the opportunity to choose. The Democratic side should have the opportunity to choose as well.

The ballot preparation is time-sensitive. Without immediate relief, constitutional injuries will be concrete. We cannot reverse this.

So I'm not asking that my name be placed on the ballot. Now I'm asking that it stay on the ballot. Because they flip-flop. And that would be an incorrect statement anyway to say can my name be placed on the ballot because the ballots are not printed. So since the ballots are not printed, I'm not asking you to do anything that would obstruct the -- or delay the election process. I'm not asking you to reprint ballots. I'm not asking you to undo anything. These ballots has not been printed, so the state will have no harm done to them to say that my name remain on the ballot. There's no injury to the state, none whatsoever.

But there will be injury to me if the courts don't allow for my name to stay on the ballot, and thousands, even millions, of voters, we have over eight million and some change registered voters in the State of Illinois. It would be a shame that they can vote and have a choice to vote on the Republican side but the Democratic side they have no choice.

Absolutely no choice at all if my name don't remain on the ballot. These people was out in the cold signing petitions to have the right to vote for whom they choose.

And so the state cannot cause injury to a person and then try to harm them any more by keeping them off the ballot. So now you adding insult to injury. You denied the person's rights, the candidate's rights, to be heard in the objection process. And then they go even further to now try to stop the voters from being heard by keeping the candidate off the ballot.

Constitutional rights and fair elections outweighs administrative inconvenience. Voters benefit from choice. Voters -- the voters benefit from choice. And when they say constitutional rights and fair elections? That's not a fair election, for one candidate out of hundreds to be blocked from the whole process. And then there is no administrative inconvenience to the State Board of Election to leave my name on the ballot. There's no inconvenience at all. None. They will be not -- they will not be harmed in any shape, form, or fashion. None. But the voters will because they won't have a choice. And it will be sad to see that the Republicans have a choice and the Democrats don't.

I was subject to bias treatment. I should have been given the same opportunity as every other candidate. Even if they believe that I would not have prevailed, even if they

believe that I had no chances at all of winning the election, I still should have had the opportunity to participate in the process, just like the other hundreds of candidates did.

Not only was that, it was a no-attorney bar. You cannot exclude a person from participating because they're not an attorney. So on top of the blockage from participating to the objections, they also told me that I shouldn't be participating because I'm not an attorney. You don't belong here. Quote, you don't belong here because you're not an attorney, and that's why you cannot access the portal. Quote, you're incompetent. But then to fix it, it says: Tillman is now listed as an attorney. I'm not an attorney. Had I listed myself as an attorney, it would have been considered fraud.

THE COURT: I think they were just trying to figure out a way so you could get access to the portal.

MS. TILLMAN: Ma'am, regardless of what they was trying to do -- okay, let's flip that. I was trying to get access. I didn't get it. Can you justify that?

THE COURT: I'm not answering your questions.

MS. TILLMAN: I mean, you just justified their error. You just justified their error, what they were trying to do. I don't care what they was trying to do. The law does not care what they was trying to do. They caused harm and injury, and they did not give me my due process. And we do not have any parallel -- we don't have any parallel cases here. We don't

have any parallel pleadings here. We have one pleading.

And so when you focus on things that the state is talking about, that's not what's before you. So you have to concentrate on the pleadings -- well, you don't have to do anything, but I would wish that you would -- I do believe federal law states that the federal judges has to rule on pleadings that's before them.

THE COURT: Correct.

MS. TILLMAN: And nowhere in my pleading am I talking about signatures. So you told me the other day that you're dismissing my case because the state said I don't have enough signatures.

THE COURT: Well, what I was asking was whether you had --

MS. TILLMAN: No, that's what you said, quote. That's what you said to me. And we're not pleading signatures here. That's not even, as far as the federal law is concerned, that's not even up for discussion. Because you're supposed to rule on things that's being pled before you. And nowhere in my pleading am I asking you to address anything about signatures. I didn't ask that.

So it's like you're making your own pleadings. You're making me have pleadings that I don't have before you. And this e-mail confirms. So I'm not just stating something. Their legal department confirms --

THE COURT: Right, I've read that.

MS. TILLMAN: -- that I was locked out. Confirming portal denial lockout. Non-attorney denial from November the 3rd to November the 21st. There is no solution for that. That cannot be fixed.

But my name should not be removed from the ballot. When these ballots print, my name should remain, my name should be printed on the ballot so that the voters can have a fair choice to elect who they want to. The state cannot give any reason that would justify blocking me from the process. There's no -- nothing that they can say that can justify them blocking me from the process and then wanting to remove me from the ballot as well. For what reason?

And even if they say that I didn't have enough signatures, I didn't have the opportunity to object to that. I didn't have the opportunity to say, well, no, I don't think so. I think I had enough. Which I know I had enough because I had 1,053 signatures above the minimum amount required to qualify me for the ballot. I turned in 2,253 signatures above the minimum 5,000 that was required. The only amount that was required was 5,000 signatures. I turned in 7,253. Of that 7,253, 6,054 of them, 53 or 54 of them, were served by registered voters. So I turned in a thousand above the minimum requirement of 5,000.

So there's no reason that I should not be on -- my

name should not remain on this ballot. And if they feel that it should be removed, I didn't get the opportunity to say, hey, I disagree with you when you say I didn't have enough. What I turned in was more than enough. The signatures that I turned in was more than enough to qualify me for the ballot. They're not saying, hey, Patricia Tillman turned in 4,000 signatures and the minimum requirement is 5,000 signatures.

THE COURT: Well, they said you were a few hundred short, which was the reason why when they made their findings you could have gone to the Circuit Court of Cook County and challenged it.

MS. TILLMAN: No, I can come to the federal courts because my due process rights were violated. I don't understand the justification of their wrongdoing but no justification for the harm that they have caused the voters.

THE COURT: Okay.

MS. TILLMAN: Then, these defendants, they acted under color of state law by administering election processes, controlling the hearing environment, and enforcing access decisions. So access to these portals are their decisions. They control it. So if they're controlling it, they supposed to make it accessible to everyone.

THE COURT: Well, I certainly seem -- sounds like that you're correct about that, that they -- if that was important in terms of being able to --

MS. TILLMAN: If?

THE COURT: -- make a challenge, then, and I guess it was, then you should, I would think, have had access. Why you didn't, I don't know.

MS. TILLMAN: Ma'am.

THE COURT: Apparently they --

MS. TILLMAN: Here go the legal department. Let me read it to you again why I didn't.

THE COURT: No, you really don't need to read it to me again.

MS. TILLMAN: But you're saying you don't know why. The legal -- their legal department --

THE COURT: Okay. They apparently thought that something about that somebody had to be an attorney, and they --

MS. TILLMAN: No, they didn't clearly think that. They clearly thought that I was incompetent. They clearly thought that there should be only one Democrat in this race. You, yourself, told me yesterday that you pretty much feel the same way because you told me --

THE COURT: I most certainly did not.

MS. TILLMAN: -- you told me, we all know that Governor Pritzker has enough signatures. You do not.

THE COURT: I do not, and I did not say that.

MS. TILLMAN: You said that.

THE COURT: And I don't know that. And I just know that his signatures are not the issue here.

MS. TILLMAN: My signatures are the not the issue here either because I'm here on due process violations.

THE COURT: Okay.

MS. TILLMAN: My signatures -- and that's what I'm saying, you're ruling on things that's not pled before you. You keep talking about signatures. We're talking about my due process violations and then deliberate interference.

Defendants acted under color of state law. They were aware that I was attacked at the hearing and did nothing. They did nothing to give me any medical treatment. They did nothing to get any police there. They did nothing. And I was attacked because I kept asking for other avenues to participate in the process. I would not give up on asking how can I participate in this process.

They then told me that I talk too much, I need to know when to be quiet, I need to know when to shut up. We are not giving you any other avenues. No other way to access. There is no other options for you.

THE COURT: This was on the --

MS. TILLMAN: November 18th.

THE COURT: -- 18th? And there was a hearing, somebody was on the phone, and you and an attorney for the objector were present; is that right?

MS. TILLMAN: Yes.

THE COURT: And it was to set a date? Was that correct?

MS. TILLMAN: It was to set a date. And even then I'm telling him I cannot access the portal.

THE COURT: And you told them that?

MS. TILLMAN: I told them that that day. We were sitting there. They're looking through the portal. I'm there with my laptop and they're doing their thing. So I'm telling them, I cannot see what you all are seeing. I am blocked. And they're telling me, no, you're, literally, you are incompetent. We cannot help that you don't know how to navigate through this portal. It is you that cannot navigate through the portal.

THE COURT: Could you explain what the portal is to me, please?

MS. TILLMAN: So, you have to go onto your computer.

THE COURT: Okay.

MS. TILLMAN: You have to log in.

THE COURT: Yes.

MS. TILLMAN: And when you log in, all the information from -- for every candidate is in there.

THE COURT: Okay.

MS. TILLMAN: Every candidate. And that is the portal where, when you log in, you can look at everybody's information; their paperwork, their petitions, their

objections, their subpoenas, their -- their appearances, their -- just everything that has to do with the election process is inside of this portal. If you don't have access to this portal, you don't know what's going on. You're clueless. This is the portal that everybody goes into in order to do anything. You cannot do anything without this portal. There's no way of doing anything if you cannot get into this portal.

So day in, day out, they might send you something 3:00 o'clock in the morning, because it's such a fast process, for you to answer to or object to. And people go on this portal, and they communicate through this portal. That is the communication process.

THE COURT: Okay.

MS. TILLMAN: So without the portal, you can't communicate with anybody.

THE COURT: Eventually you were able to get in?

MS. TILLMAN: The window was closed. There was no more communicating about anything when they opened it up to me. When they opened it up to me -- it's like if we out there on that lake and we're about to get on the boat and we're waiting in line to get on the boat. Now they going to open up the gate for everybody to ride. So they went out there, they cruised, they came back. You wanted to get on this boat but they keep the chain there so you can't get on. So when they finally, now, you see the ship coming back, going forward, going back,

going forward, going back, but they still holding you behind this chain. Now, you've been standing there telling them you want to get on this boat. Twelve hours has gone by but they still have you standing there. When the hours are up and they're closing, and you still at that gate, they opened it up, and you get ready to get on board, and they tell you it's closed. But you been there that whole time trying to get a ride, but they wouldn't let you on. So now, when they opened up the gate, there's no more rides. It's over. It's over for the season. That was the last day. And you really wanted to ride, but there's no more rides, and you can't get on until next year.

So this is not -- I can't even repeat this until four years from now. And even then, people are going to scrutinize, oh, well, she didn't have enough signatures to get on the ballot. Oh, she did something wrong. Oh, she was incompetent, she didn't even know how to navigate the portal to stay on the ballot. So these are the rumors that's going around because I didn't have access. This is what's in the media. This is them saying Patricia Tillman has been tossed off the ballot because of incompetency. It's not saying Patricia Tillman was excluded from the ballot because of an error due to the Board of Elections. It's not saying Patricia Tillman was blocked from the objection process, so, therefore, she will not be on the ballot for the March 17, 2026, election. It's not

acknowledging their error at all.

Not only that, we're talking about wealth-based barriers to this election. Because even at the hearings, they -- I was told, you're not a billionaire, so you don't belong here.

THE COURT: Somebody said that to you?

MS. TILLMAN: Yes. Can I take a break?

(Brief recess.)

THE CLERK: Court resumes in session.

MS. TILLMAN: I apologize.

THE CLERK: 26 CV 218, Tillman versus Illinois State Board of Elections.

THE COURT: Is there something more to be said?

MS. TILLMAN: I just want to say that my due process rights was violated because I was not treated equally as the other candidates.

THE COURT: Okay.

MS. TILLMAN: And I'm just asking that the Court orders that my name remain on the ballot for printing for the March 17, 2026, election. That my name remain on the ballot.

THE COURT: Thank you. I will consider your arguments.

THE CLERK: All rise. Court is adjourned.

(Proceedings concluded at 2:11 p.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Sandra M. Tennis* *April 14, 2026*

Sandra M. Tennis
Official Court Reporter

Date